825 F.2d 1554
 45 Fair Empl.Prac.Cas. 116,
44 Empl. Prac. Dec. P 37,535
Edward J. MAUTER, Plaintiff-Appellant,
v.
The HARDY CORPORATION, a corporation, and Air and Piping,
Inc., a corporation, Defendants-Appellees.
 No. 86-7730.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 31, 1987.
 
 Martha Campbell, Birmingham, Ala., for plaintiff-appellant.
 C.V. Stelzenmueller, Burr & Forman, F.A. Flowers, II, Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 This appeal challenges the grant of a motion for summary judgment in an age discrimination suit. Edward J. Mauter (Mauter), brought this action in the United States District Court for the Northern District of Alabama against his former employer, The Hardy Corporation (THC), and its sister corporation, Air and Piping, Inc. (API), seeking damages for alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621 et seq., (ADEA). The district court held that Mauter failed to produce any evidence that his termination was motivated by discrimination and therefore found that the defendants were entitled to judgment as a matter of law. We affirm.
 
 
 2
 At the time of his termination in 1983, Mauter worked as a plumbing estimator for THC in Birmingham, Alabama. THC is a mechanical contracting business controlled by the Marwood Corporation. Although THC's primary business is the installation and service of Heating, Ventilating and Air Conditioning (HVAC) systems, the company also maintained a small plumbing department in order to provide full service to its customers. Mauter joined the plumbing service of THC in 1956. During the term of the plaintiff's employment with THC, the company operated under contracts with the local sheet metal workers and plumbers unions. Mauter himself left the union when he earned his Master Plumber's license and became the plumbing estimator for the department in 1958.
 
 
 3
 In the early 1970s, the unionized sector of the mechanical contracting industry began experiencing increased competition from non-union mechanical contractors. Soon thereafter, the National Labor Relations Board (NLRB), decided a line of cases authorizing "double breasted" or "dual shop" operations. Under these decisions it is lawful for a union business and a non-union business to operate under a certain degree of common ownership and control so long as the companies maintain a separate corporate existence.
 
 
 4
 In response to the trend in the mechanical contracting industry implementing these decisions, THC's owner, the Marwood Corporation, decided to undertake such a venture in 1975. Therefore, a separate corporation, API, was organized to operate as a non-union HVAC shop. Originally formed as a wholly owned subsidiary of THC, all of API's stock was sold to the Marwood Corporation in 1980, which distributed 20% of the shares to salaried employees of API. Although THC and API share common ownership through Marwood Corporation and are controlled by interlocking boards of directors, the two companies have taken great pains to highlight the autonomous corporate existence of each enterprise in order to appease the NLRB. At all times relevant to this litigation, the businesses operated at different locations and maintained separate books and records. Tom Cordell acted as president of API handling the day-to-day management of the non-union company. Bob Young, THC's president, performed the same function for the union business. Any exchange of management services, tools or equipment between the companies took place pursuant to fair market rental rates. In short, THC and API consciously structured their business relations according to the factors utilized by the NLRB in judging the propriety of double breasted operations. By adhering to strict degrees of separateness, THC avoided liability for unfair labor practices or breach of union contracts.
 
 
 5
 In 1983, API decided to open a non-union plumbing department to operate in conjunction with its HVAC business just as Mauter's union plumbing crew complemented THC's operations. On April 1, 1983, Cordell employed Harold Robertson, aged 38, as estimator for the API department. Robertson was licensed as a Master Plumber and had several years experience as a project manager and estimator with a non-union plumbing company. It is undisputed that API's non-union plumbing department has flourished under Robertson's leadership.
 
 
 6
 During this same time period, THC began suffering financial difficulties and labor problems as a result of its union contracts. THC's agreement with the sheet metal workers union expired on May 31, 1983. Union workers continued working on the company's projects while THC engaged in contract renewal negotiations with the union. By the end of July, these negotiations reached a total impasse and the union workers refused to continue working for THC. THC was forced to assign its project agreements to a competitor.
 
 
 7
 As of September 1, 1983, Young realized that THC's relations with the sheet metal workers union were beyond repair. He suspected that the remaining THC workers planned to file a decertification petition with the NLRB. Since THC would no longer operate as a union shop, it was not economically feasible to maintain a union plumbing department which, according to the undisputed testimony of Bob Young, had been losing money. THC's union contract with the plumbers and pipefitters union expired on August 31, 1983. THC did not renew the plumbing contract.
 
 
 8
 In mid-September, the management of THC informed Mauter that THC planned to close the union plumbing department and terminate his employment as of October 31, 1983. Mauter was sixty years old. In January, 1984, Mauter filed an age discrimination charge with the Equal Employment Opportunity Commission (EEOC) and subsequently filed this suit in district court alleging violations of the ADEA. The district court granted the defendant's motion for summary judgment finding that the plaintiff had failed to produce evidence sufficient to establish a prima facie case of age discrimination.
 
 
 9
 In reviewing the grant of a summary judgment motion, the question is whether there is a genuine issue of material fact. F.R.Civ.P. 56(c). We make this determination viewing all of the evidence in the light most favorable to Mauter, the non-moving party. Sweat v. Miller Brewing Co., 708 F.2d 655, 656 (11th Cir.1983).
 
 
 10
 In age discrimination cases, this circuit has elected to follow a burden of proof scheme substantially similar to that established for Title VII cases in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A person who alleges that he was unlawfully discharged because of age must demonstrate to establish a prima facie case that (1) he is a member of the protected age group, (2) he is qualified for the position he held, (3) he was discharged, and (4) a person outside the protected class replaced him. Krieg v. Paul Revere Life Ins. Co., 718 F.2d 998, 999 (11th Cir.1983), cert. denied, 466 U.S. 929, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984). In situations involving a reduction in force, however, the employer seldom seeks a replacement for the discharged employee. Accordingly, the fourth prong of the prima facie case is altered to require that the plaintiff "produce evidence circumstantial or direct, from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. Unit B 1981), cert. denied, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).
 
 
 11
 Since the plaintiff's job with THC was eliminated, the district court analyzed this case under the reduction in force formulation of the McDonnell-Douglas test. The court concluded that Mauter failed to present any evidence of intentional age discrimination and hence did not establish a prima facie case. On appeal, the plaintiff argues that the district court erroneously concluded that THC and API acted as separate employers for purposes of the ADEA. Mauter claims that the operations and ownership of the two companies were integrated to such a degree as to constitute a single enterprise. Therefore, API's hiring of Robertson as a plumbing estimator constituted a replacement of Mauter's position satisfying the traditional version of the prima facie case.
 
 
 12
 We deem it unnecessary to address the peripheral, albeit interesting, question of integration. Assuming, arguendo, that API and THC operated as one employer under the ADEA and hence the plaintiff established a prima facie case, Mauter did not present a jury issue as to the defendants' intentional discrimination because of age. By establishing a prima facie case, the plaintiff in an ADEA action creates a rebuttable presumption that the employer unlawfully discriminated against him. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden of production then shifts to the employer to introduce evidence of a legitimate, nondiscriminatory reason for the employee's discharge. If the defendant offers such evidence, the burden shifts back to the employee to prove by a preponderance of the evidence that age discrimination motivated his discharge. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217; Horn v. Bibb County Commission, 713 F.2d 689, 691 (11th Cir.1983). "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983).
 
 
 13
 In support of their summary judgment motion, the defendants offered substantial evidence of a legitimate, non-discriminatory reason justifying Mauter's termination. The affidavit testimony of Bob Young, president of THC, established significant economic reasons, unrelated to Mauter's age, for closing the union plumbing department. In September, 1983, when THC had to decide whether or not to renew the contract with the plumbers union, Young realized that the sheet metal workers would seek decertification. With the HVAC business going non-union, there was no sound reason for continuing a union plumbing business which had operated primarily as a sideline of the unionized HVAC enterprise.
 
 
 14
 By this time, Robertson had been operating the non-union department of API for several months and, by all accounts, doing an excellent job. If Mauter had been moved to the non-union shop to take over Robertson's job, the distinctive nature of the two companies would have been jeopardized. THC, already embroiled in labor disputes with the sheet metal workers union, could then face charges from the NLRB which would substantially slow down the decertification process and expose the company to huge financial liability.
 
 
 15
 The plaintiff fails to allege or demonstrate that THC and API could have postponed the establishment of the non-union plumbing shop at API until such time as Mauter could safely be transferred without danger to the legitimacy of the double breasted operation. See Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607 (11th Cir.1987). We note that the workers at THC did not receive official decertification until January 17, 1984. NLRB policy required that the companies maintain a discrete corporate existence for six additional months. Therefore, Mauter would not have been available to work in the non-union shop until well over a year after its inception under Robertson's leadership. We do not believe that the ADEA requires that employers postpone a profitable venture to retain older employees any more than it mandates that younger employees be fired so that employees in the protected age group will have a job. Id. at 610.
 
 
 16
 Once the defendants articulated a legitimate reason for the discharge, the burden shifted to Mauter to prove by a preponderance of the evidence that age discrimination was a reason for his discharge. The plaintiff, to shoulder this burden, must introduce evidence that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1445 (11th Cir.1985). The plaintiff responded to the defendants' motion for summary judgment with his own affidavit. This document does not contravene the defendants' articulated explanation for Mauter's dismissal. Rather, the plaintiff seeks to present direct evidence of discriminatory intent. In his affidavit, Mauter recounts a statement made to him by Carl Morton, a THC vice president who retired in 1983. According to Mauter, Morton indicated that the plaintiff had grounds for a lawsuit because "The Hardy Corporation was going to weed out the old ones." Morton also filed an affidavit indicating that he has no memory of making such an assertion to Mauter, and that he has no knowledge of facts suggesting that age had any bearing on the decision of THC's management to terminate Mauter.
 
 
 17
 For purposes of considering the propriety of summary judgment, we assume that Morton made the statement to Mauter. It is undisputed, however, that Morton played no part in the decision to terminate the plaintiff. Furthermore, Morton's uncontradicted affidavit establishes that he has no factual basis for his assertion the age was a factor in Mauter's discharge. Therefore, we hold that this statement is too attenuated to present a genuine issue of material fact as to THC's discriminatory intent. See La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1412-13 (7th Cir.1984).
 
 
 18
 Even if Mauter established a prima facie case, the defendants' solid evidence of a legitimate, non-discriminatory reason for their actions completely rebuts the inference of discrimination raised by the plaintiff's initial showing. Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir.1987). The plaintiff did not controvert the defendants' proof by setting forth specific facts showing that there is a genuine issue whether age was a substantial factor in THC's decision. Resolving all doubts against the defendants and drawing all inferences from the underlying facts in the light most favorable to the plaintiff, we agree with the district court that Mauter did not present an issue of fact regarding the defendants' motive for terminating him. See Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 371 (5th Cir.1980) (possibility of reasonable jury reaching contrary inference does not reify to the point even of thin vapor); Pace v. Southern Ry. System, 701 F.2d 1383, 1392 n. 8 (11th Cir.) (assuming threshold prima facie case established, defendant successfully rebutted it leaving no issue for trial), cert. denied, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).
 
 
 19
 AFFIRMED.