Betty Jean LONG, Plaintiff,

v.

FIRST FAMILY FINANCIAL SERVICES, INC. OF GEORGIA, Defendant.

Civ. A. No. 287–21.

United States District Court,
S.D. Georgia,
Brunswick Division.

Nov. 19, 1987.

Amanda Williams, Brunswick, Ga., Fletcher Farrington, Savannah, Ga., for plaintiff.

Daniel M. Shea, Atlanta, Ga., Wallace E. Harrell, Brunswick, Ga., for defendant.

## ORDER

ALAIMO, Chief Judge.

Plaintiff has filed suit against her employer, alleging that she was terminated because of age and sex discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). First Family Financial Services, Inc. of Georgia ("First Family") moves for summary judgment contending that there is no evidence that age or sex played a part in the decision to terminate plaintiff. Defendant also seeks summary judgment in its favor on its *Yost v. Torok*, 256 Ga. 92, 344 S.E.2d 414 (1986), counterclaim or, alternatively, if the motion for summary judgment is denied, a ruling that liquidated damages under the ADEA are not recoverable in this case as a matter of law.

Summary judgment on the liquidated damages claim, the *Yost* counterclaim and the ADEA claim will be denied, but summary judgment on the Title VII claim will be granted.

FACTS

Plaintiff was employed by First Family and its predecessor for over 20 years. She started work in 1956 as a cashier and reached the position of Assistant Branch Manager in August 1977. In March 1978, she was promoted to Branch Manager of the Brunswick, Georgia, branch office. Four years later, in September 1983, she was promoted to Regional Supervisor with responsibility for ten branches. Regional Supervisors report to one of three District Supervisors. After approximately 14 months as a Regional Supervisor, plaintiff

was reassigned to the Brunswick branch, as Manager, in January 1985. It is unclear whether this reassignment was a unilateral demotion or a consensual reassignment based on the specific needs and potential of the Brunswick branch.

On July 17, 1985, plaintiff was terminated. She was 52 years old at the time and was replaced by a younger female, Ms. Bishop. Bishop's age does not appear in the record, but neither party disputes the fact that she was younger than the "protected" age of 40.

Defendant recites financial data concerning the state of the Brunswick office during 1985, focusing on allegedly low volumes of real estate loans, consumer loans, finance accounts, bulk purchase accounts, overall outstanding loan amounts, losses of consumer accounts and employee numbers. Defendant communicated concern to plaintiff about the health of the branch on June 20, 1985. Home office representatives visited plaintiff in her office on July 16 and discussed performance objectives for the branch. As was a usual practice, management sought plaintiff's signature on a "performance warning" outlining the branch's goals which plaintiff agreed were fair objectives. However, plaintiff refused to sign the warning, contending that it did not include a date for realization of the goals, which was allegedly inconsistent with company policy and practice. When she again refused to sign the warning the next morning, she was terminated "immediately."

Plaintiff relies on her *prima facie* case, evidence of low retiree numbers, comments by the comptroller, inconsistent practices and an alleged incident of sexual harassment to establish that her discharge was the result of sex- and/or age-based discrimination.

## DISCUSSION

To succeed on a motion for summary judgment, the movant must establish the absence of genuine issues of material fact such that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142, 152 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986). *Celotex* indicates that the moving party is not required to completely prove a negative; rather, the movant must make a plausible showing of the absence of evidence on a necessary element of the cause of action. The burden is then on the nonmoving party to establish, by facts commensurate with its burden of proof at trial, that a genuine issue exists as to the contested element of its cause of action.

The nonmoving party's response "by affidavits or as otherwise provided ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must consider the pleadings, depositions and affidavits in the case in reaching its decision, Fed.R.Civ.P. 56(c), and make all reasonable inferences in favor of the nonmovant. *Adickes, supra* 398 U.S. at 158–59, 90 S.Ct. at 1609, 26 L.Ed.2d at 155. Of course, an inference based on speculation and conjecture is not reasonable and need not be made by the Court. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir.1982).

Finally, the Court may not disregard a factually specific affidavit merely because it is somewhat inconsistent with prior testimony of the affiant. *Tippens v. Celotex*, 805 F.2d 949 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). Before an affidavit can be considered a sham, and thus disregarded by the trial court, it must contain statements which clearly contradict responses to earlier unambiguous questions. *Id.*

While the laws which prohibit sex-based and age-based discrimination are distinct statutes, the operative language is identical and the analysis and precedents used by the courts are interchangeable. *See Spanier v. Morrison's Management Services, Inc.*, 822 F.2d 975, 979 n. 3 (11th Cir.1987). The statutes state: "It shall be unlawful ... to discharge ... or [to] otherwise dis-

criminate against any individual ... because of such individual's age [or sex]." ADEA, 29 U.S.C. § 623(a); Title VII, 42 U.S.C. § 2000e–2(a)(1). This seemingly straightforward language poses difficult questions both in the areas of employers' rights and standards of proof.

■■■ While there is no legitimate employer interest in discrimination, employers have a significant interest in organizing their personnel. Apart from the specific prohibitions against sex- and age-based motivations, employers have considerable discretion in hiring, promoting and discharging personnel. This discretion must be at its greatest in management-level personnel decisions where often subjective criteria such as compatibility, leadership, adherence to company policy and support for the company's goals are utilized. *See, e.g., Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369 (5th Cir.1980). Employer decisions may appear whimsical, unbusinesslike and even manifestly unfair to the aggrieved employee, a court or a jury. However, "merely unfair" actions are not unlawful nor actionable under the federal anti-discrimination statutes. As Judge Wisdom stated: "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is *not* for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984) (emphasis added). Only decisions made on the proscribed bases including age or sex may be challenged under the ADEA and Title VII; and only those plaintiffs who can show a factual basis for relating their discharges to invidious discrimination can survive summary judgment. *See, e.g., Mauter v. Hardy Corp.*, 825 F.2d 1554 (11th Cir. 1987) (summary judgment for defendant affirmed); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590 (11th Cir.1987) (same).

On the other hand, courts recognize that direct evidence of discrimination—even where it exists—is often difficult to uncover. While most employers have taken steps to eradicate discrimination from the workplace, others continue to discriminate but are careful to cover their actions with seemingly neutral justifications. Difficulties of proof exist in both class suits and individual claims; but while class plaintiffs can turn to statistical analysis, individual plaintiffs must often rely on the interpretation of small bits of circumstantial evidence. As in other areas of law, circumstantial evidence which gives rise to reasonable inferences on the ultimate issue is an appropriate method for proving discrimination.

Accordingly, a three-step analysis arising from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is regularly used by the courts to assist in pinpointing discriminatory reasons for employment decisions. Step one of the *McDonnell Douglas* analysis provides a plaintiff with a rebuttable presumption of discrimination if she can make out a *prima facie* case. *Mauter*, 825 F.2d at 1557. Once plaintiff's *prima facie* case is established, the employer has, by a burden of production, an opportunity to show that nondiscriminatory reasons prompted the discharge. *Spanier*, 822 F.2d at 980. The plaintiff may then attempt to rebut that proffered reason, showing that it is merely a pretextual explanation.

There are variations of the *prima facie* case: (1) the employee establishes she was a member of the protected class, was qualified for the position, was fired and was replaced by someone outside of the protected class; (2) the employee establishes that she was fired while others, not in the protected class, having comparable or lesser qualifications were retained; or (3) the employee establishes that she was a member of a protected class, that she was qualified for the position and that disciplinary rules were applied differently to her than to members outside the protected class. *Nix*, 738 F.2d at 1185.

The employer can rebut the presumption arising from the *prima facie* case by producing evidence that a nondiscriminatory reason existed for the discharge. The justification may be company-wide retrenchments, *e.g., Grigsby*, 821 F.2d 590; changes in employee status due to mergers, *e.g.,*

*Mauter,* 825 F.2d 1554; violations of company policy, *e.g., Tamimi v. Howard Johnson Co.,* 807 F.2d 1550 (11th Cir.1987); *Nix,* 738 F.2d 1181; or, most commonly, assertions that the employee was performing her assigned duties inadequately. *E.g., Spanier,* 822 F.2d 975; *Simmons,* 619 F.2d 369. The defendant need only produce evidence of the nondiscriminatory reason, and the trial court cannot disregard that proffered explanation. *See Nix,* 738 F.2d 1181.

The plaintiff's rebuttal is then directed at showing that the proffered justification is merely pretextual: "The plaintiff, to shoulder this burden, must introduce evidence that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Mauter,* 825 F.2d at 1558.

While the *McDonnell Douglas* analysis assists in structuring the inquiry, it is not "intended to be rigid, mechanized, or ritualistic." *United States Postal Service v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983). *McDonnell Douglas* has created semantic disputes in jury charges, as well as difficulties in determining who has what burden of proof, when and on what issues in a motion for summary judgment. Difficulties are compounded because defendants also have available the *Mt. Healthy* defense which provides judgment for the defendant if it "showed by the preponderance of the evidence that it would have discharged [plaintiff] even if it had not discriminated on the basis of age." *Spanier,* 822 F.2d at 979, *citing Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977).

The Eleventh Circuit states that the ultimate inquiry is whether the plaintiff "show[ed] a preponderance of the evidence that age was a determining factor in [defendant's] decision to terminate her." *Spanier,* 822 F.2d at 980. Indeed, the Court appears to approve of discarding the entire *McDonnell Douglas* analysis once the case gets to the jury:

> When the court has allowed both parties to develop their full proof, the analysis of

the evidence should look to whether plaintiff has met the ultimate burden of persuading the trier of fact that [she] has been the victim of intentional discrimination.... In such a case, neither the trial court nor this court need parse the evidence in accordance with the ebb and flow of shifting [*McDonnell Douglas* ] burdens.

*Spanier,* 822 F.2d at 980, *quoting Smith v. Farah Mfg. Co.,* 650 F.2d 64, 68 (5th Cir. 1981). However, the language implies a finding that, at some point prior to the jury's consideration, the plaintiff made a sufficient showing that prohibited discrimination played a significant role in her discharge. Plaintiff is at that point now.

Applying the *Celotex* summary judgment standard along with the *McDonnell Douglas* analysis, plaintiff must show the following elements if the employer has produced evidence of nondiscriminatory reasons for a challenged discharge: (1) that plaintiff is a member of a protected class; (2) that she was discharged; (3) that she was qualified for the job; (4) *either* that she was replaced by one outside of the class, or disparate application of a company rule; *and* (5) that the employer's proffered explanation is pretextual.

A failure by plaintiff to establish any of the elements entitles defendant to summary judgment; but as the nonmovant in the motion, all reasonable inferences on each of the elements must be made in favor of the plaintiff. Applying this standard to the instant case, the Court finds that plaintiff's claim under the ADEA survives summary judgment but that her claim based on sex discrimination is factually deficient.

### (A) *Age Discrimination*

█ Initially, plaintiff offers two pieces of evidence which, if proved, raise a permissible inference of age discrimination. There was an admission by defendants that only one person has reached retirement age and was in fact retired by the company, which has been in existence for over 30 years. That person was the president of

the company.[1] Second, she offers a statement regarding older workers made by the comptroller of the company. The following exchange took place during the deposition of First Family's Senior Vice President, Mr. Chastain:

Q. While you were with First Family, are you aware of any practice or policy to get rid of employees because they were older?

A. Not because they were older, no. However, I think I should tell you that I have heard the comptroller say or talk about how much more money would be in profit sharing if the longer-term employees left, and that would be Tryon Huggins.

Q. Do you remember when he said that?

A. He said it many times....

Deposition of Mr. Chastain, at 24.

While neither piece of evidence can be considered direct evidence that there was a policy to rid the company of older employees or that this plaintiff was a victim of such a policy, taken together, they provide an inference that such a policy *may* have existed. *But cf., Mauter*, 825 F.2d at 1558 (discounting a contested statement by a vice president that a company "was going to weed out the old ones" where the declarant could not have played a part in the decision to terminate plaintiff).

Because courts recognize "that the inference of intentional discrimination raised by a plaintiff's *prima facie* case may be stronger or weaker, depending upon the facts of the particular case," *Grigsby*, 821 F.2d at 595, the above evidence should be kept in mind when reviewing the elements of this plaintiff's *prima facie* case.

Some of the elements of the *prima facie* case are not contested: (1) plaintiff was a member of the protected age group; (2)

plaintiff was discharged; and (3) plaintiff was replaced with someone outside of the protected class. Defendant forcefully argues that plaintiff was not qualified for the position of the Brunswick Branch Manager. Defendant contends that, because plaintiff's performance fell below their goals and expectations, which were known to plaintiff, she was therefore unqualified for the position. Defendant *confuses* "qualified" with performance.

■ "Qualified," under any plain meaning given to the word, relates to the background and skills necessary to carry out the functions of the position. Whether the employee was *applying* those skills in a satisfactory manner is a separate question. Plaintiff was Branch Manager prior to her promotion to Regional Supervisor, and was then *re* assigned to the Branch Manager position. Merely reassigning her to the position indicates that defendant believed she was qualified for the job. These facts alone are sufficient to raise a permissible inference that she was qualified for the job.

Defendant cites a number of Seventh Circuit cases which adopt its version of the term "qualified." To be qualified for a job, the plaintiff must be satisfying the legitimate expectations of the employer. *Dale v. Chicago Tribune Co.*, 797 F.2d 458 (7th Cir.1986); *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421 (7th Cir.1986); *Huhn v. Koehring*, 718 F.2d 239 (7th Cir.1983). This interpretation of qualified does not appear to be adopted by the other Circuits, nor is there a persuasive reason for adopting it here. As the Seventh Circuit cases make clear, the trial courts in those decisions made alternative findings that, assuming the plaintiff made out a *prima facie* case, including "qualification," there was sufficient evidence that the poor performance was a legitimate and non-pretextual reason

---

1. The admissions by defendant on this point have been withdrawn and a new answer substituted, pursuant to Order of this Court. However, there is a legitimate dispute as to whether defendant's substituted answer, which shows eleven additional retirees, is legitimate. Plaintiff, in her opposition to the motion to withdraw the admission, establishes that at least two of the newly named retirees are not in fact age-related retirees. Employees were questioned in deposition about whether anyone apart from the president had retired from the company and they answered in the negative. Resolving all factual disputes in favor of plaintiff, the Court proceeds in this motion assuming plaintiff could prove that the president was the company's *only* age-related retiree.

for termination. This Court declines to adopt the Seventh Circuit's version of "qualified."

The most contentious issue at this stage is whether plaintiff has successfully rebutted defendant's proffered explanation for her termination. Although internal documents of the defendant cite "poor performance" as the reason for dismissal, defendant also contends that plaintiff's failure to comply with company policy was another legitimate, non-pretextual reason.

### (1) Poor Performance

Defendant points to the relative deficiencies between the various branches in the amounts of loans and overall revenue of the Brunswick branch while managed by plaintiff as empirical evidence of poor performance. These figures are not seriously contested by plaintiff. Defendant also points out that plaintiff knew, from the moment she was reassigned to Brunswick, that she was expected to increase branch revenue.

Plaintiff attempts to rebut the allegation of poor performance on two fronts. First, she contends that the defendant has miscalculated the financial well-being of the branch while under her control because it failed to include the July figures to which she contends she is entitled because she was employed for over 50% of the month. She also contends that defendant failed to credit her with revenue from accounts which she developed and which were ultimately acquired by the branch.

As well, plaintiff contends—in what is essentially an equitable estoppel argument—that any deficiency in her performance was caused by lack of support and assistance from her supervisors. The argument has merit in this situation because of the structure of the company. As a branch manager, plaintiff's authority was limited and there were certain types of accounts that could not be acquired without the express review and authorization of supervisors. Plaintiff describes in-depth one such account—a bulk purchase of a retailer's credit accounts—where her supervisor's inaction prevented her branch from acquiring new business. The branch did acquire the account after plaintiff's termination. The inference she seeks the trier-of-fact to reach is that defendant *purposely* withheld approval so that her performance figures would be low, thus justifying termination.

### (2) Policy Violation

Defendant also contends that it was fully justified in discharging plaintiff because she refused to sign the performance warning, despite her admission that the goals it contained were fair objectives for the branch. While it is uncontested that performance warnings were regularly used by the company, and that discharge resulted from failure to realize the stated goals, defendant has offered no evidence that it was company policy to immediately discharge a non-signing manager—apparently because such a refusal had never before occurred.

Plaintiff counters by arguing that the warning was not in line with others prepared by the company because it lacked a realization date. Although there is a noticeable lack of documentary evidence on other warnings used by the company, plaintiff states from her own experience as a supervisor that inclusion of a realization date was a regular practice. She also contends that a date was required by the company's policy manual.

Plaintiff's argument is essentially a disparate imposition of disciplinary rules argument. *See Nix*, 738 F.2d 1181. In support of its argument that failure to sign the warning justified dismissal, defendant cites *Cooley v. Potters Industries*, 36 F.E.P. 697 (D.C.N.J.1984). Despite no evidence that other employees were required to sign a "performance warning," the court discounted a disparate rules application argument stating:

> Requiring [plaintiff] to sign the statement in question was a racially neutral decision, and one which could legitimately have been asked of any employee whose work history equaled [plaintiff's].

*Id.* at 700–01.

Somewhat supporting plaintiff's argument that new rules sufficiently show pre-

text is *Tamimi*, 807 F.2d 1550, where the court discounted an employer's explanation that the employee refused to abide by a new rule. There, the new rule required that all employees were required to wear makeup; but the rule appeared to be directed specifically at the receptionist/plaintiff, knowing she would refuse.

In this case, defendant has more than simply "articulated" a legitimate reason for plaintiff's discharge; it has established that branch revenue was low and that she did not abide by a company policy. At the same time, plaintiff has offered some facts which chip away at those reasons. Considering that all reasonable inferences must be made in favor of the plaintiff, the Court finds that she has met her burden of proof suggesting that the proffered explanations were pretextual.

This Court finds that the proper presentation of this case is to allow both sides to "develop their full proof" and have the jury decide whether plaintiff met her "ultimate burden of persuading the trier of fact that [she] has been the victim of intentional discrimination." *Spanier*, 822 F.2d at 980.

### (B) *Sex Discrimination*

■ Plaintiff has not established sufficient facts which would allow a jury to find that sex played a role in her termination. Plaintiff relies upon her affidavit which details an incident of sexual harassment to support her claim. The alleged incident took place on her first trip as a Regional Supervisor in November 1983. On that trip, her immediate supervisor, Mr. Jarrett, requested after numerous phone calls that she go to bed with him. She refused and complained to the senior vice president about the incident. She also complained about Jarrett's penchant for vulgarities and his harsh manner with subordinates. Plaintiff was immediately assigned to a different supervisor.

Without discounting the seriousness of the incident, the Court finds that plaintiff has failed to establish facts which correlate that incident to her discharge some 18 months later. Although plaintiff has subjective feelings that her complaint about the incident led to strained relationships and lack of support by supervisors, they are unsupported by any facts.

Rather than approving or ratifying the action of its employee, the company immediately acted upon her complaint and changed her supervisor.

Plaintiff has failed to establish by factually sufficient evidence any of the variations of the *prima facie* case. She was replaced by a woman, and the numbers establish that the vast majority of discharged managers in the last years have been male and not female. Statistics also show that women currently comprise a majority of the branch manager positions. Consequently, judgment in favor of defendant on the Title VII claim is warranted.

### (C) *Liquidated Damages Under ADEA*

■ Exemplary damages in the form of double back pay are recoverable against a defendant who willfully violates the terms of the ADEA. 29 U.S.C. § 626(b). Willfulness is shown if "the employer knew or showed reckless disregard for the matter whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523, 538 (1985). A good faith intentional act which causes disparate impact does not warrant liquidated damages. However, as the Eleventh Circuit points out, an individual discharge decision motivated by age discrimination can hardly be characterized as an action taken in good faith. *Spanier*, 822 F.2d at 981-82.

Here, defendant admits knowledge of the ADEA. If plaintiff proves her case of intentional age discrimination, she is entitled to a jury determination as to whether defendant's actions were also willful.

### (D) *Yost Counterclaim*

Because the Court finds that plaintiff's ADEA claim survives summary judgment, it necessarily follows that the *Yost v. Torok* question is not ripe for a summary judgment decision.

*CONCLUSION*

There are material issues of fact in this case and it appears that justice will best be served by placing all the facts relevant to the ADEA claim before a jury for its determination. Accordingly, defendant's motion for summary judgment on the ADEA claim and its counterclaim are DENIED.

Because there is insufficient factual basis for a sex discrimination claim, summary judgment in favor of the defendant on the Title VII claim is GRANTED. Accordingly, the Clerk of Court is directed to enter an appropriate judgment of dismissal on the Title VII issue only.