Theresa M. McKEON, Plaintiff,

v.

VAICAITIS, SCHORR, RICHARDS, ET AL., M.D., P.A., d/b/a Diagnostic Clinic, and Louis Palermo, M.D., Andrew Peters, M.D. and Donald Moyer, Defendants.

No. 90–287–CIV–T–17B.

United States District Court, M.D. Florida, Tampa Division.

Feb. 24, 1992.

Mark Frederick Kelly, Charleen Catherine Ramus, Kelly & McKee, P.A., Tampa, Fla., for plaintiff.

James J. Cusack, John William Robinson, IV, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's motion for summary judgment and/or to dismiss complaint, filed September 10, 1991 and response thereto, filed October 10, 1991. For the following reasons, the motion for summary judgment is granted.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969).

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for dis-

covery and upon motion, against a party who fails to establish the party's case, and on which that party will bear the burden of proof at trial. *Id.*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

The complaint was filed in this cause March 9, 1990, and was supplemented February 1, 1991. The supplemented complaint is brought under 42 U.S.C. §§ 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 207, Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), Equal Pay Act of 1963, and Fla.Stat. §§ 760.01 *et seq.*, Florida Human Rights Act.

The following facts are not in dispute. Plaintiff began her employment as a Certified Registered Nurse Anesthetist (hereinafter "CRNA") with Diagnostic Clinic in December 1987 (Plaintiff's depo. Vol. I, pp. 16–17). As a CRNA it was her responsibility to see patients, evaluate them, check out their past medical history, their past surgical history, and to assist anesthesiologists in all phases of anesthesia (Plaintiff's depo. Vol. I, pp. 17–19; Plaintiff's depo. Vol. II, pp. 7–9).

Plaintiff started work at the initial salary of $39,000. Subsequent to her six-month review, Plaintiff received a four percent salary increase (Plaintiff's depo. Vol. I, p. 127). Diagnostic Clinic gave the Plaintiff an eight and one-half percent salary increase approximately two months after her first salary raise (Plaintiff's depo. Vol. I, p. 127).

Plaintiff alleges that Defendants Moyer, Palermo and Peters assigned her more work and more difficult work tasks than the male CRNAs and treated Plaintiff differently than the male CRNAs with respect to the scheduling of work hours, vacation, compensation for overtime and continuing education, on the basis of Plaintiff's sex. Plaintiff also alleges that she was paid substantially less than similarly qualified and less qualified male CRNAs, despite the fact that she performed substantially more work and more difficult assignments.

Plaintiff filed her discrimination charge with the Equal Employment Opportunity Commission in June, 1989 and left her employment with the Diagnostic Clinic in July, 1989 (Plaintiff's depo. Vol. I, pp. 22–25).

CONCLUSIONS OF LAW

The following conclusions of law are applicable to the issues involved in the motion for summary judgment:

1. There are various types of Title VII claims. Plaintiff here is alleging claims of disparate treatment and constructive discharge.

2. A disparate treatment charge is one where an employee alleges less favorable treatment because of sex, race, etc. In a disparate treatment case a Plaintiff must prove discriminatory animus. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Plaintiff carries the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her.

3. A constructive discharge case is like a disparate treatment case. Plaintiff must allege that the employer intentionally rendered the working conditions so intolerable that the employee was compelled to quit involuntarily. *Buckley v. Hospital Corporation of America, Inc.*, 758 F.2d 1525 (11th Cir.1985). To find constructive discharge the trier of fact must be satisfied that working conditions were so difficult or unpleasant that a "reasonable person in the employee's shoes would have felt compelled to resign." *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987), citing, *Bourque v. Powell Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980).

4. A *prima facie* case of discrimination may be made in several ways. First, Plaintiff may establish the elements of the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973). Additionally, Plaintiff may establish the *prima facie* case by direct evidence of discriminatory intent or by statistical proof of a pattern of discrimination. *Buckley*, 758 F.2d at 1529.

5. Plaintiff must prove her *prima facie* case by a preponderance of the evidence. The preponderance of evidence standard in Title VII cases means establishment of a "legally mandatory, rebuttable presumption." *Burdine*, 450 U.S. at 254, n. 7, 101 S.Ct. at 1094, n. 7.

6. Under the test of *McDonnell Douglas*, Plaintiff must produce evidence of the four prongs of that test: 1) she was a member of a protected group, 2) an adverse employment action took place, 3) she and a similarly situated non-protected person received dissimilar treatment, and 4) sufficient evidence, either circumstantial or direct, exists to infer a nexus or causal connection between race and the disparate treatment. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), *Nix v. WLCY Radio*, 738 F.2d 1181 (11th Cir.1984).

7. If Plaintiff meets this threshold of establishing a *prima facie* case of discrimination by a preponderance of the evidence, the burden shifts to the employer to come forward with a legitimate nondiscriminatory business reason for the adverse action taken. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Where the employer carries this burden and shows such nondiscriminatory reason, the burden once again shifts to Plaintiff to show by a preponderance of the evidence either that the offered reason is mere pretext and that a discriminatory reason more likely motivated the employer or by indirectly showing that the proffered explanation is unworthy of credence. *Burdine*, at 256, 101 S.Ct. at 1095.

■ 8. Summary judgment may be appropriate where the undisputed facts demonstrate that Plaintiff has not sustained her burden of establishing a *prima facie* case pursuant to the standards of *Celotex Corporation*. If Plaintiff establishes a *prima facie* case, Defendant may rebut the case with affidavits, depositions, or undisputed documentary evidence demonstrating legitimate, nondiscriminatory reasons for the adverse employment action. The burden then is on Plaintiff to offer evidence that the stated reasons were merely pretextual. Mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1984).

■ 9. The fact that Plaintiff initially demonstrated a *prima facie* case, if rebutted by the employer, is not relevant to the action following that rebuttal. *United States Postal Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Therefore, summary judgment is appropriate in a discrimination case where Plaintiff fails to set forth specific facts showing a genuine issue exists as to whether an employer's articulated reason is pretextual. *Mauter v. Hardy Corp.*, 825 F.2d 1554 (11th Cir.1987).

## DISCUSSION

■ Plaintiff has asserted incidents of discrimination relating to the charges of disparate treatment and constructive discharge due to the existence of an adverse working environment. The Court has examined these articulated incidents and has determined that they cannot survive the motion for summary judgment under the appropriate standards.

Plaintiff has established for purposes of this motion that she is a member of a protected group, a female, who worked as a CRNA for the Diagnostic Clinic. Plaintiff began work in December, 1987 and was given an individual four percent raise in June, 1988. Two months later, Diagnostic Clinic instituted a wage adjustment and a 15–month pay freeze for all current CRNAs. This wage adjustment allowed a systematic one-time per year review of all nurses' wages instead of the previous system of individual raises on varying dates.

In August, 1988, the CRNA hourly pay rates and longevity were as follows:

| CRNAs | Sex | Longevity With Clinic | Hourly Rate |
|---|---|---|---|
| Don Moyer | M | 10 years | $26.44 |
| Mike Baier | M | 6 years | $24.52 |
| Carol Marshall | F | 3½ years | $22.12 |
| Theresa McKeon | F | 9 months | $21.15 |
| David Smith | M | 4 months | $20.91 |

Plaintiff wishes to be compared with and paid the same as Defendant Moyer, a male CRNA with a higher rate of pay than Plaintiff in August, 1988. Moyer had been a nurse anesthetist since 1958, approximately 20 years longer than Plaintiff, and served as the supervisory chief nurse at most of his prior positions and at Diagnostic Clinic. Moyer also had nine and one-half years more seniority with Diagnostic Clinic than Plaintiff but had not received any raises since early 1987. Plaintiff has never held any supervisory position such as chief nurse.

Plaintiff alternatively wishes to be compared with and paid the same as Michael Baier, another male CRNA, with a higher rate of pay than Plaintiff. Baier had approximately five and one-half years more seniority than Plaintiff. Baier also had more education than Plaintiff but, like Moyer and unlike Plaintiff, had not received a raise for over a year preceding the August, 1988 adjustment.

Plaintiff does not wish to be compared with David Smith, a more recently hired CRNA. Smith made less than Plaintiff although he worked a full surgery schedule, with overtime and call time, unlike Plaintiff.

In March, 1989, Diagnostic Clinic hired two new CRNAs. Dan Gagner and Mike McMann, both males, were hired at the initial salary of $22.36 per hour. Diagnostic Clinic had a desperate need for CRNAs and recruited the new CRNAs from the Miami area. Diagnostic Clinic paid these new CRNAs premium hourly rates to attract them and both new hires worked full schedules, with overtime and call time, unlike Plaintiff. These new hires came after the August, 1988 wage freeze for other CRNAs and had a higher hourly rate than both Plaintiff and male CRNA David Smith.

Plaintiff had complained to Diagnostic Clinic about her irregular surgery schedule, too much overtime, and excessive call time. She wanted to be home more on a regular basis with her disabled husband. Diagnostic Clinic accommodated Plaintiff's scheduling requests and rescheduled Plaintiff for a standardized five day 40–hour surgery workweek with minimal overtime work and reduced call time. All other CRNAs were subject to the Clinic's irregular scheduling requirements, meaning considerable overtime and unpredictable call time.

■ Plaintiff further alleges discriminatory surgery assignments. She claims that male CRNAs had better surgery assignments and that she suffered from performing less desirable surgery. However, sex was never a factor in CRNA rates of pay or work assignments. Defendants made CRNA work assignments and paid CRNAs to accommodate surgical needs, seniority, experience, expertise, employee cooperation, effort, and other factors. Plaintiff's objection to overtime and call duty meant that she had a regular workweek, but less overtime pay. Her dislike for irregular hours meant that other CRNAs had to perform extra overtime and call time work that would have been assigned to Plaintiff.

Plaintiff's co-workers complained that Diagnostic Clinic's preferential treatment of Plaintiff was abusive toward them. Four of Plaintiffs co-workers, including Defendant Moyer, signed a petition with the concurrence of two other co-workers and presented it to the director of the Clinic, members of the Clinic's administration, and the anesthesiologists. These co-workers

complained about Plaintiff's special schedule with no overtime or call time, which had lowered morale and created antagonism in the department. Plaintiff's male and female co-workers complained about their increased workloads and responsibilities because Plaintiff was "not assuming her burden of responsibility." These co-workers believed that Plaintiff should resign or be terminated if she could not fulfill the complete requirements of her CRNA position. Overall, Plaintiff was unpopular with her co-workers, both male and female. Still, Defendants did not take any disciplinary action against Plaintiff in spite of this petition.

Finally, Plaintiff alleges her second departure from Diagnostic Clinic was sexually discriminatory. She claims that she was first fired in late 1988. The Clinic disagrees and believes Plaintiff quit when she walked off her job during scheduled surgery. Other CRNAs were required to assume her extra workload and call duty while Plaintiff was out for a week. It is undisputed that Plaintiff voluntarily returned to work after a one week absence. Plaintiff was not paid for this week because she did not work.

■ Plaintiff's only allegations about Moyer are that he discriminated against her with regard to scheduling, by giving himself and two of his favorite CRNAs, Carol Marshall and Mike Baier, the best work assignments. Plaintiff admitted in her deposition, however, that Moyer made assignments in this manner because he did not like Plaintiff and she had no proof that the manner in which Moyer made assignments was in any way related to her sex. This allegation is consistent with all of Plaintiff's conclusory allegations about Defendants. Plaintiff presents no evidence beyond those conclusions based on her observation that she was paid less than some male CRNAs for work performed under similar working conditions. Plaintiff may make such allegations that male CRNAs received preferential treatment in scheduling practices, wages, *inter alia*, but that is all she offers to rebut Defendant's showing of legitimate reason for the employment

actions. Plaintiff has not established a *prima facie* case of discrimination. Furthermore, on the basis of the above facts, this Court determines that summary judgment should be granted on all constructive discharge claims. Defendants did not make working conditions so intolerable and discriminatory that a reasonable person standing in Plaintiff's shoes would have been compelled to resign. Accordingly, motion for summary judgment is granted.

The Court is satisfied that no factual dispute remains as to this issue that precludes the entry of summary judgment. Accordingly, it is

ORDERED that Defendant's motion for summary judgment be GRANTED as there exists no issue of material fact that Defendants discriminated against Plaintiff on the basis of sex.

DONE AND ORDERED.