[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12057
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-02709-SCB-TGW

HAROLD A. TAYLOR,

Plaintiff-Appellant,

versus

TEAKDECKING SYSTEMS, INC.,
a Florida Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 2, 2014)

Before MARCUS, KRAVITCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Harold A. Taylor, a black male, appeals the district court's grant of summary judgment to Teakdecking Systems, Inc. ("Teakdecking") in his lawsuit alleging both racially discriminatory and retaliatory discharge under Title VII, 42 U.S.C. §§ 2000e-2(a)(1), 3(a).[1]  Taylor was employed by Teakdecking as a human resources manager for approximately four years before he was terminated in October 2010.  He alleged that during his tenure he met or exceeded Teakdecking's performance expectations, yet the company discharged him and outsourced his position, not because it was dissatisfied with his performance and wished to save money as it asserted, but instead because he was black and had made complaints about what he perceived to be the discriminatory treatment of black employees.  The district court granted Teakdecking's motion for summary judgment, concluding that Taylor had not made out a *prima facie* case with respect to either of his discrimination or retaliation claims, and in any case, he had not rebutted the company's legitimate nondiscriminatory rationales for his discharge. Taylor contends that the district court erred in doing so.[2]  After careful review, we affirm.

---

[1] Taylor also asserted parallel state claims under the Florida Civil Rights Act ("FCRA"), which were likewise disposed of by the district court.  Taylor does not appear to specifically challenge the court's disposal of his state law claims on appeal, but regardless, we apply the same analysis to Title VII claims and FCRA claims.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387, 1389 (11th Cir. 1998).

[2] Taylor also contends that the district court erred in considering certain evidence submitted in connection with Teakdecking's motion for summary judgment.  Because he did not

2

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1222 (11th Cir. 2009).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Under Federal Rule of Civil Procedure 61, an error by the district court is ground for disturbing a judgment or order only if it affects a party's substantial rights.  Fed.R.Civ.P. 61.

A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or statistical proof.  *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008).  When reviewing Title VII claims supported by circumstantial evidence, we generally employ the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  Under this analysis, a plaintiff must first establish a *prima facie* case of misconduct.  *Id.*  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.*  "If the employer satisfies its burden

---

object to the admissibility of that evidence below, the argument is waived.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  In any case, the court did not abuse its discretion in considering the contested evidence.  *See Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1305 (11th Cir. 1999) (noting that a district court's rulings on the admissibility of evidence are reviewed for abuse of discretion).

3

by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Id.*

To prove pretext, the plaintiff may show that the employer's proffered reasons were "a coverup for a . . . discriminatory decision." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (quotations omitted). The court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotations omitted). Whether an employment decision was "prudent or fair" is irrelevant, *see Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999), because an "employer is free to choose whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions," *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 728 (11th Cir. 1999). In other words, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it [;] . . . [q]uarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088 (citation omitted).

A plaintiff cannot show disparate treatment by merely citing statistics.  *See Burke-Fowler v. Orange County*, 447 F.3d 1319, 1325 (11th Cir. 2006).  Without any analytical foundation, statistical evidence is "virtually meaningless" and cannot be probative of pretext.  *See Wilson*, 376 F.3d at 1089.  If the plaintiff is unable to satisfy his burden of demonstrating a triable issue of fact that the employer's stated reason was pretextual, the grant of summary judgment for the defendant is proper.  *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

Taylor's first claim was that Teakdecking discharged him because of his race.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  To establish a *prima facie* case for disparate treatment in a wrongful termination case, the plaintiff may establish that: (1) he was a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) a similarly situated individual outside his protected class was treated more favorably. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  The *McDonnell Douglas* framework was intended to be flexible, however, with the precise methods of presenting a *prima facie* case contingent on the particular situation

5

presented.  *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  For example, where a plaintiff's job has been eliminated through a reduction in the employer's workforce, it becomes "almost impossible" for a plaintiff to establish the fourth prong articulated above because the employer seldom seeks a replacement in such cases.  *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).  Accordingly, in such cases, the fourth prong of the *prima facie* case is altered to require that the plaintiff "produce evidence circumstantial or direct, from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."  *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir. 1987) (quotations omitted).

The district court properly granted summary judgment to Teakdecking on Taylor's discriminatory termination claim.  Taylor's initial challenge is to the court's application of the analytic framework typically applied in discriminatory discharge cases.  *Prima facie* burdens under *McDonnell Douglas* are flexible, and as Taylor correctly points out, when a plaintiff's job has been eliminated, we apply a modified analysis, altering the fourth prong of the typical four-part analysis.  *See Barnes*, 814 F.2d at 609; *Mauter*, 825 F.2d at 1557.  Under the modified *prima facie* analysis, rather than identifying a comparator at the fourth prong, the plaintiff may instead produce evidence from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching its decision.

6

*Mauter*, 825 F.2d at 1557.  Here, the district court did not expressly review Taylor's claim under this modified framework.  Even so, any error in this respect was harmless, for two reasons.  First, even though the court did not expressly operate under the reduction-in-force framework, it nevertheless ended its *prima facie* analysis by concluding that the circumstantial evidence presented in this case "fail[ed] to support an inference that [Teakdecking] terminated [Taylor] on the bas[is] of race."  In the end, then, the district court appears to have held Taylor to the proper burden under the fourth prong of the modified reduction-in-force analysis, even if it did not explain that it was doing so.

Next, even assuming *arguendo* that Taylor made out a *prima facie* case, his discriminatory discharge claim still failed because he did not successfully rebut Teakdecking's proffered legitimate nondiscriminatory reasons for his discharge. The record shows that the company's President decided to terminate Taylor and outsource Teakdecking's human-resources function sometime in 2010.  He explained as much to Taylor when he actually discharged him in October 2010, a point Taylor concedes.  Then, a month later, in November 2010, Teakdecking entered into an agreement by which it outsourced its human-resources responsibilities, including recordkeeping, I-9 compliance, benefit administration, and drug-testing oversight—the very same functions that Taylor used to perform. The company's director of employee development explained that the decision to

7

outsource was motivated in part by economic concerns, evidenced by the company's 2009 layoffs and its cost savings of $8,000 per year, and concerns with Taylor's performance.  Regarding the latter, evidence showed that the director of employee development was dissatisfied with Taylor's presentation performance in 2008 as well as his response to an employee termination in 2009; that Taylor never updated the company's job descriptions or completed a Fair Labor Standards Act ("FLSA")-compliance audit; and that he failed to complete or cooperate in the compilation of employee reports in 2009 and 2010.

Outside of Taylor's conclusory and self-serving allegation that his performance met or exceeded expectations throughout his tenure, the only evidence he offered to support pretext was the disproportionate rate by which black employees were allegedly terminated during his tenure—approximately 17 out of 39 employees by his count.  However, these naked statistics are "without analytic foundation," and as such, they cannot alone establish intentional discrimination. *See Burke-Fowler*, 447 F.3d at 1325; *Wilson*, 376 F.3d at 1089.  In sum, absent competent evidence discrediting Teakdecking's proffered discharge rationales or otherwise supporting an inference of discriminatory intent, even if Taylor made out a *prima facie* case of discriminatory discharge, his claim failed in any case.

II.

8

Taylor also alleged that he was terminated in retaliation for complaints he made regarding what he perceived to be the discriminatory treatment of black employees in the workplace. Retaliation is a separate offense under Title VII, which prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice" under the statute, including discrimination on the basis of race. 42 U.S.C. § 2000e-3(a). The goal of this provision is to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," including freedom from race discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 63, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). However, an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff may show that: (1) he engaged in a protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Burlington Northern*, 548 U.S. at 68, 126 S.Ct. at 2412. Although a causal connection can be established by the close temporal proximity between the protected activity and the materially adverse action, we have held that

9

a three to four month disparity between the statutorily protected expression and the adverse action is not enough. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Prior to filing a Title VII action, a plaintiff first must exhaust his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). A plaintiff's judicial complaint is limited by the scope of the EEOC investigation that could "reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280. However, "the scope of an EEOC complaint should not be strictly interpreted." *Id.*

As with Taylor's discrimination claim, the district court also properly granted summary judgment with respect to his retaliation claim. First of all, because Taylor's EEOC charge referenced only his alleged complaints of *racial* discrimination, the court properly excluded from consideration any evidence related to his October 2010 complaint regarding the alleged *non-race-based* harassment of a white female coworker. Absent such evidence, the record shows that Taylor was discharged in October 2010, nearly five months after he last commented to management in May 2010 regarding what he perceived to be the discriminatory treatment of blacks at the company. The temporal separation of

10

these events, however, foreclosed his *prima facie* case, at least in the absence of any other evidence demonstrating causation.  *See Thomas*, 506 F.3d at 1364.

But in any case, even if Taylor's alleged complaint regarding the harassment of Clay is considered and a *prima facie* case of retaliation is assumed, his claim still failed because, as the district court properly concluded, he did not successfully rebut Teakdecking's legitimate nondiscriminatory rationales for his discharge.  As discussed above, Taylor presented no evidence to discredit Teakdecking's explanations for his discharge or otherwise create an inference of unlawful intent. Specifically, Taylor's only evidence of having complained of the discriminatory treatment of blacks was his May 2010 remark, which, as already noted, occurred five months before his discharge.  Furthermore, while his complaint about the alleged harassment of a white female employee occurred just two weeks prior to his October 2010 termination, even if considered, it cannot support an inference that Teakdecking retaliated against Taylor due to his opposition to racial discrimination because the employee's alleged harassment was not race-based. Accordingly, Teakdecking was entitled to summary judgment.

**AFFIRMED.**