**Margaret M. BAKER,**
**Plaintiff–Appellant,**

v.

**SEARS, ROEBUCK & CO.,**
**Defendant–Appellee.**

No. 89–3892
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

June 26, 1990.

Edward S. Stafman, Tallahassee, Fla., for plaintiff-appellant.

Richard Smoak, Sale, Brown & Smoak, Panama City, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, and ANDERSON, Circuit Judges.

PER CURIAM:

The district court granted summary judgment in this age discrimination case because the plaintiff, the appellant here, failed to establish a prima facie case. Specifically, the plaintiff failed to prove that she was qualified for the employment position at issue. We AFFIRM the district court's judgment for the reasons stated in its dispositive order, which appears in the appendix.

## APPENDIX

VINSON, District Judge:

### ORDER

The plaintiff filed this action under Section 7(b) of the Age Discrimination in Employment Act (ADEA) [29 U.S.C. § 626(b)]. The only claim set out in the complaint is that the defendant, the plaintiff's current employer, discriminated against her due to her age. Pending is the defendant's motion for summary judgment. (Doc. 48)

### I. *Factual Background*

The plaintiff began working with the defendant in 1947 at its store in Dothan, Alabama. After a brief hiatus in 1964–1965, she returned to work with the defendant at its store in Panama City, Florida. In 1973, she was transferred into the appliance department where she worked on commission. She was employed in the appliance department as a salesperson from 1973 to August 1986. During the plaintiff's last full year in the appliance department (1985), she earned over $45,000.

In August 1986, at the age of 59, the plaintiff was transferred from her position in the appliance department to the furniture department, where she alleges she sustained a $15,000 annual loss of income. The reduction in salary is significant because of the defendant's pension plan. An employee of the defendant may retire at age 55 with 20 years of service. The plaintiff met these requirements approximately one year before her last transfer. According to the plaintiff, an employee's pension is based on the level of her last three years of salary. Thus, by continuing employment with the defendant, the plaintiff reduces her eventual retirement income.

The defendant is engaged in the business of, *inter alia*, manufacturing, selling, and distributing household goods. Such goods are manufactured, sold, transported, and otherwise produced for sale in interstate commerce. *See* 29 U.S.C. § 630(h). At all times material to the claim, the defendant has had in its employ 20 or more employees for each working day in each of 20 or more calendar weeks in the preceding year. *See* 29 U.S.C. § 630(b).

As a commission salesperson in the appliance department, the plaintiff was required to meet the defendant's sales quotas, not only for merchandise volume, but also for maintenance agreements (MAs). The latter are extensions on warranties for appliances sold at the time of purchase. The record indicates that MAs are more difficult to sell than the appliances themselves, and most salespersons with the defendant have difficulty meeting their MA quotas. Although the plaintiff registered the greatest dollar volume in merchandise and MA sales of all appliance department sales staff, she repeatedly failed to meet her MA quota. Beginning in approximately 1981, the plaintiff had been frequently counseled by her supervisors regarding her failure to sell her quota of maintenance agreements.

The defendant emphasizes the sale of maintenance agreements because it provides a much higher profit margin than does the sale of merchandise. The defendant imposes an MA quota on every salesperson, a fixed percentage of the total dollar volume of merchandise sold. Thus, the number required to be sold by each salesperson varies according to the total value of the merchandise that he or she sells. In 1985, the defendant applied a 6% quota to all salespersons in the Panama City store.

The defendant annually evaluates the performance of each employee, including an assessment of whether the 6% MA quota has been attained if applicable. Evaluations are recorded on the Sears Selling Employee Review Form (SSERF). The SSERF registers 10 areas of performance, including personal sales, sales expertise, and knowledge of merchandise. Each of these is measured on a 7–point scale, ranging from poor (1) to outstanding (7). It is accompanied by a page accommodating additional supervisor comments, employee comments on ratings, and an interview summary. This form is dated and then signed by the employee, the interviewer, and a second member of the rating committee. When necessary, a Memorandum of Deficiency Interview (MDI) outlining areas which require improvement is given to the employee and signed by both the employee and the interviewer. In addition, a date is assigned for the employee to be interviewed again. The planned follow-up is not mandatory, but can be set within a month.

On January 31, 1979, the plaintiff's SSERF was excellent overall. Her average rating was a six ("exceeds requirements of the job"), and she was rated "the top professional in the store in terms of merchandise sales." In addition, she was informed that she "must concentrate her efforts on selling MA's." (Defendant's Exhibit A) The record shows this to be the first time that improvement in selling maintenance agreements was suggested to the plaintiff.

On the plaintiff's April 3, 1981 SSERF, it was pointed out to her that she "needs to improve on trading up and selling M.A." (Def.Ex. B) Again in 1982, comments on the SSERF indicated that although there had been improvement, the plaintiff still had a problem selling maintenance agreements. The interview summary stated "[w]e have counseled at length with [the

plaintiff] concerning the sell [sic] of maintenance agreements and meeting standards. She has shown marked improvement in this area but has yet to consistently maintain standard." (Def. Ex. C)

In March, April, and June of 1983, MDIs recorded the defendant's concern over the plaintiff's repeated failure to reach the quota for the sale of maintenance agreements. (Def. Exs. D–F) The June MDI stated that "[i]f she fails to accomplish this, action will be taken which will involve removing her from these divisions." In 1984, the format of the SSERF was modified to include space specifically requesting evaluation of maintenance agreements. Again, the plaintiff was warned that she needed to continue to improve her selling of maintenance agreements. Also, not inconsistent with previous reports, she was rated the best in sales.

On May 27, 1985, the SSERF was very positive. The plaintiff was rated the best in her group and the best in Panama City; she ranked first in her division, and reached her MA sales quota. (Def. Ex. H) One month later, on June 4, 1985, an MDI was given to the plaintiff regarding her performance selling maintenance agreements. This letter stated that the plaintiff had failed to reach her quota for the fourth time that year. It rated her performance level "unacceptable" and cause for termination. The MDI included a warning that termination or re-assignment would be considered if she did not improve immediately. In addition to the typed portion of the letter, the interviewer handwrote that he had requested permission for a job change for the plaintiff, but had not yet received word regarding the request.

In August of 1985, another MDI was issued. This one reiterated that the plaintiff's performance needed to be improved and stated that "[a]n occasional good month is not satisfactory." It gave her until October 1985 to make considerable progress and threatened to place her in a position that did not require the selling of maintenance agreements or involve commission sales.

On May 8, 1986, an MDI was issued to the plaintiff threatening to move her to a commission selling division without maintenance agreements if immediate and sustained improvement was not made by her. (Def. Ex. L) On July 2, 1986, a follow-up to the May 8th MDI was given to the plaintiff. It stated that the plaintiff had reached her maintenance agreement quota in June of 1986. As a result, any adverse action toward the plaintiff would be delayed. It concluded: "[I]n the event the goal is not achieved in July and subsequent months, Mrs. Baker will be moved from her current assignment to an assignment without M.A.'s." (Def. Ex. M) Finally, on August 4, 1986, in a follow-up review to this last review, the plaintiff was informed that she was being transferred to another assignment for failing to achieve the standard in July. (Def.Ex. N)

The plaintiff filed a complaint against the defendant with the Equal Employment Opportunity Commission, and filed this suit after no action was taken within 90 days of filing. The record reflects that the plaintiff is still employed by the defendant as a commission saleswoman in the furniture department.

## II. *Discussion*

■ There is no dispute that the jurisdictional requirements of a claim under the ADEA have been met in this case. This Court has jurisdiction.

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Matsushita Electric Indus. Co. v. Zenith Ra-*

*dio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 [1355], 89 L.Ed.2d 538 (1986).

On a summary judgment motion, the record and all inferences that can be drawn from it, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993 [994], 8 L.Ed.2d 176 (1962). Furthermore, the court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties. *See Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565, 1570 (11th Cir.1987).

 The plaintiff bears the burden in this case of establishing by a preponderance of the evidence that age was a determining factor in the defendant's decision to take adverse employment action against her. *See Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989); *Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir.1982). In this circuit, the plaintiff in an ADEA suit must first establish a prima facie case of discrimination through direct or circumstantial evidence, or through the presumption recognized under the four-part test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Carter v. City of Miami, supra*, 870 F.2d at 581.

The plaintiff here has attempted to use the *McDonnell Douglas* test to establish her prima facie case; she has also presented statistical and direct evidence of age discrimination. (Doc. 50) Under the *McDonnell Douglas* test, the plaintiff generally must show that: (1) she is a member of the protected group; (2) adverse employment action was taken against her; (3) she was replaced by a person outside the protected group; and, (4) she was qualified for the position she held. *See, e.g., Carter v. City of Miami, supra*, 870 F.2d at 582; *Stanfield v. Answering Service, Inc.*, 867 F.2d 1290, 1293 (11th Cir.1989); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987).

The plaintiff was 59 at the time she was transferred to the furniture department; the parties agree that this resulted in a substantial reduction in annual income. It may also adversely affect her retirement benefits if she continues working. Thus, there is no question that she was within the protected group and that adverse employment action was taken against her.

 The plaintiff was replaced two months after her transfer with Jo Thomas, who was 41 at the time she began working in the appliance department. The defendant argues that the third prong of the *McDonnell Douglas* test is not satisfied because Thomas, the plaintiff's replacement, was over age 40 and, therefore, also a member of the protected group. However, the failure to show replacement by a member of the nonprotected group is not fatal to a plaintiff's prima facie case under ADEA in this circuit. *See Carter v. City of Miami, supra*, 870 F.2d at 583; *Stanfield v. Answering Service, Inc., supra*, 867 F.2d at 1294. "[T]he particularly amorphous nature of age discrimination counsels against rigid application of the [*McDonnell Douglas*] test." *Pace v. Southern Ry. System*, 701 F.2d 1383, 1387 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *see McCorstin v. United States Steel Corp.*, 621 F.2d 749, 752–54 (5th Cir.1980).

 Unlike race discrimination cases where membership within a protected group is measured dichotomously, membership is a matter of degree with age discrimination. In the present situation, Thomas is 41 while the plaintiff is 59. Unlike race or sex, age "is not a discrete and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group. Rather, age is a continuum along which the distinctions between employees are often subtle and relative ones." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1442 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *see also McCorstin, supra*, 621 F.2d at 754. Thus, a plaintiff's inability to show that she was replaced by someone under 40 is not an absolute bar to the establishment of a prima facie case. *See, e.g., Castle v. Sangamo Weston*, 837

F.2d 1550 (11th Cir.1988); *Goldstein, supra,* 758 F.2d at 1442–43 (citing *McCorstin, supra,* 621 F.2d at 754). The establishment of a prima facie case is a factual question evaluated in light of the particular circumstances of a given case. Because the plaintiff has shown that she was replaced by a substantially younger person, and when viewed in the light most favorable to the plaintiff, I find that the plaintiff has satisfied the third prong of the *McDonnell Douglas* test.

In this circuit, the fourth prong may be established by evidence that the plaintiff has performed her responsibilities for several years without complaint. *See Stanfield v. Answering Service Inc., supra,* 867 F.2d at 1293–94. The plaintiff claims that she was qualified for the position in the appliance department based on her level of merchandise sales. She apparently sold more merchandise in her department than any other salesperson. This she claims met or exceeded the defendant's expectations. However, despite her good merchandise sales, the record reveals that Sears was not satisfied with her overall performance.

The plaintiff began to work in the appliance department in 1973. Between 1979 and 1986 plaintiff was repeatedly warned of the possible adverse employment action which might result if her maintenance agreement sales were not improved. In addition, the plaintiff was frequently counseled in an effort to improve these sales. Throughout this time period, the plaintiff excelled in her merchandise sales. Both the plaintiff and defendant recognize the excellent achievement of the plaintiff on this aspect of her job.

Nonetheless, it was the defendant's business policy to require each member of its sales force to maintain a sales quota for selling maintenance agreements amounting to 6% of their merchandise sales. Demotion or termination could result from either substandard merchandise or maintenance agreement sales. The standard policy of the defendant is to move or terminate every employee who fails to meet the maintenance agreements' sales standard. (Jordan deposition, at 11) After about 7 years of chronic substandard maintenance agreement sales, the plaintiff was transferred to the furniture department. During the months immediately preceding this transfer, the plaintiff was given explicit warning of her pending transfer if her MA sales were not greatly improved and maintained. When she failed to maintain them, she was transferred. The plaintiff admits that the transfer was not a surprise to her. (Baker deposition, at 18)

It is clear that the plaintiff failed to meet the performance expectations of the defendants. This failure occurred over an extended period of time and ultimately resulted in the plaintiff's being transferred. In response to this, the plaintiff attempts to demonstrate that her repeated failure to meet the maintenance agreement quota is not evidence that she is unqualified for her former position. Two related arguments are advanced by the plaintiff.

First, she argues that in 1985 her dollar sales of maintenance agreements is greater than any other sales person in her department. However, this simply indicates that the plaintiff sold more maintenance agreements than her co-workers or the ones she sold were more expensive. The defendant has chosen not to set its maintenance agreement standard with a fixed dollar figure, but rather as a percentage of sales. There is nothing in the record to suggest that this policy discriminates against older workers. Whether this business policy happens to adversely affect the plaintiff is not the issue.

The plaintiff's second argument fails for similar reasons. She claims that because she had to sell a greater volume of MAs to match her greater volume of merchandise sales, she was forced to concentrate on selling higher quality, higher priced items. The record indicates that the more expensive merchandise does not necessarily carry with it a more expensive maintenance agreement. If this were true, then it may indeed be more difficult for the plaintiff to reach her quota. However, unless this potentially awkward business policy discriminates against older employees, the fact

that it adversely impacts on the plaintiff is not relevant. Again, there is no evidence in the record to suggest that it does so.

The plaintiff has, therefore, failed to demonstrate her prima facie case by means of the *McDonnell Douglas* test.

An ADEA claimant may also establish a prima facie case of age discrimination through either direct evidence or statistical proof of discriminatory intent. The plaintiff has also attempted to establish her case with both types of evidence.

As statistical evidence, the plaintiff has attempted to show that younger employees who fail to meet the MA quota are treated more leniently than older employees. The plaintiff suggests that this data may be used to establish her prima facie case by proving "disparate treatment." Evidence of disparate treatment may be shown by demonstrating that a younger employee with similar work-related deficiencies was treated in a more lenient manner. *See Delgado v. Lockheed–Georgia Co.*, 815 F.2d 641, 647 (11th Cir.1987).

The data offered by the plaintiff compare the set quotas and actual performance for selling maintenance agreements of six younger employees. Each of the six individuals, all much younger than the plaintiff, failed to achieve his or her required maintenance agreement quotas on a regular basis.[1] The plaintiff asserts that none of the younger employees were demoted after failing to achieve the required maintenance agreement quota, and thus other employees, outside the protected class who also violated the work rule, were not similarly treated.

I am unable to accept the statistical conclusions drawn from this data. First, the record refutes the plaintiff's claim that no action was taken against these six employ-

1. Each employee below was required to sell maintenance agreements in the department in which he or she worked.

| Employee | Age As Of 12/88 | 1986 | | 1987 | |
|---|---|---|---|---|---|
| | | Quota | Average | Quota | Average |
| Leonard | 39 | 9.0 | 8.29 | 9.0 | 7.03 [2 mos.] |
| | | | | 10.0 | 9.08 [1 mo.] |
| Graham | 43 | 9.0 | 7.48 [2 mos.] | 9.0 | 10.22 [2 mos.] |
| | | | | 10.0 | 9.45 [10 mos.] |
| Potter | 35 | 4.0 | 2.52 [8 mos.] | 4.0 | 2.56 [2 mos.] |
| | | | | 4.5 | 4.42 [10 mos.] |
| Gibson | 39 | 1.5 | 1.14 [8 mos.] | 1.5 | 0.59 [2 mos.] |
| | | | | 2.0 | 1.51 [10 mos.] |
| Consorte | 21 | 1.5 | 1.3 [8 mos.] | 1.5 | .84 [2 mos.] |
| | | | | 2.0 | 1.30 [10 mos.] |
| Wall | 22 | 1.5 | 1.25 [2 mos.] | 1.5 | 3.71 [2 mos.] |
| | | | | | 2.20 [10 mos.] |

Note: With the exception of Graham, each employee fell outside the protected group. Graham, age 43, is much younger than the plaintiff and may be considered outside the protected

ees.[2] Three of these employees are on deficiency warnings for failure to meet their MA quotas. Two have resigned without improvements in performance. The sixth employee has been transferred, like the plaintiff, from a department requiring maintenance agreement sales to one that does not. Thus, all six of these employees have had some adverse action by Sears. This evidence provides, at best, only marginal support for the plaintiff's assertion.

There is also a more serious problem with the plaintiff's statistical evidence. The sample the plaintiff has chosen for comparison is not well-suited for the conclusions she seeks to draw. The plaintiff's own employment history suggests that an employee may be put on a warning for an extended period of time before any serious adverse employment action is taken. The data in the record does not suggest that any of these younger employees have failed to reach their quotas for more than 10 months, whereas the plaintiff failed to reach hers over a period of 6 or 7 years. A more appropriate comparison group would be comprised of employees who have experienced repeated warnings for their failure to attain MA quotas over a period of many years. At most, the plaintiff's data suggests that employees who have repeatedly failed to reach the quota over an extended period of many years are more likely to receive adverse employment action than employees who have experienced a similar failure for a shorter period of time. While this effect may have some correlation with age since it follows that employees with more years of service will probably be older, it is by no means apparent that age is a determining factor.

As direct evidence of discriminatory intent, the plaintiff has introduced the testimony of several current and former Sears employees who describe a policy of the defendant to coerce older fulltime management employees into retirement. Jo Thomas is currently employed by the defendant in the Panama City store's appliance department. She testified that she has observed at least two older employees being taken out of management positions and placed in commission sales positions which resulted in their retirement because they were unable to earn as much through commissions as they previously earned in their fixed salaries. (Thomas deposition, at 15,-28)

Edris Whitehurst worked for Sears for 30 years, including 27 years as hardware department manager. At the time of his retirement, an employee of the defendant could retire at age 55 with 10 or more years of service. When Whitehurst reached this age, he was informed that he could retire; he was also told that if he did not retire, he would be transferred to the automotive department as supervisor, a demotion in responsibility if not in pay. Whitehurst opined that the defendant has a policy of making retirement attractive in order to eliminate persons in high-paying positions so that it can hire more part-time employees, and thereby, cut back on payroll.

Richard Whitelock was employed at the defendant's Panama City store in a management position from 1965 to 1989. He testified that he had a conversation with Charles Jordan, manager of the Panama City store, concerning the plaintiff:

> In May of 1986 Charles Jordan told me that he was going to move Margaret Baker from the Appliance Department to the Furniture Department due to her

---

group. *See McCorstin v. United States Steel Corp., supra,* 621 F.2d at 754.

**2.** Employees Graham, Potter, and Gibson are all on deficiency warnings for failure to reach their maintenance agreement quotas. Employees Consorte and Wall, under alleged pressure to improve the performance of selling maintenance agreements, voluntarily resigned. I do not find that the warnings given Graham, Potter, and Gibson necessarily refute the plaintiff's claim. The degree of adverse employment action taken against these three employees is not as serious as the transfer to another department experienced by the plaintiff. Similarly, the voluntary resignations of Consorte and Wall do not necessarily affect the plaintiff's claim, because they may have resigned for reasons not of record. Nevertheless, the defendant's policy with regard to these six other employees appears to be consistent with the warnings over a long period of time given to the plaintiff prior to her transfer.

poor maintenance agreement performance. But, he said that he did not expect her to take the move because her personal sales in the Appliance Department were greater than the entire Furniture Department's volume, so she would experience a substantial decrease in income. He said that since she was old enough to retire she probably would before she would take the transfer.

(Whitelock affidavit, ¶ 8)

Jordan himself testified that the transfer of the plaintiff was motivated by the need for salesmanship in the furniture department. (Jordan deposition, at 29–30) Jordan emphatically denied that the plaintiff's age was a factor in his decision. (*Id.*)

Evidence demonstrating that an employer used direct coercion to force an employee to "choose" retirement may establish liability under the ADEA. *Stamey v. Southern Bell Telephone & Telegraph Co.*, 859 F.2d 855, 860 (11th Cir.1988). There is evidence that Sears may have a policy of encouraging its older higher compensated managerial employees to "choose" to retire, as Thomas, Whitehurst, and Whitelock testified. But the plaintiff is not a managerial employee. Management employees are compensated primarily by salary, while commission sales personnel like the plaintiff receive a large part of their compensation through sales commissions. This is evidenced from the plaintiff's own loss of income resulting from the transfer in question. Commission sales positions are apparently desired by the defendant's sales people; Jo Thomas felt her move to the appliance department was a promotion. While it may be reasonable to infer that Sears has a policy of encouraging its fixed-salary, higher paid management employees to retire, it is difficult to find any motive for Sears to offer or encourage its commission sales personnel to retire early. Sears' policy toward its management employees is not necessarily related to its sales employees; they are clearly distinct groups. Therefore, I cannot find that there is any direct evidence in the record of intent by Sears to coerce or "encourage" its older sales personnel to retire by transfers to other departments.

As a final observation, it appears that the defendant's policy regarding the maintenance agreements quotas is counterproductive and has an "unfair" effect upon good sales employees, such as the plaintiff. But basic unfairness does not establish discrimination, and there is not sufficient evidence in the record to establish a prima facie case of age discrimination, giving all reasonable inferences in favor of the plaintiff.

For the reasons discussed above, I conclude that the plaintiff has not met her burden of establishing a prima facie case under any of the three available methods. Accordingly, the defendant's motion for summary judgment is GRANTED, and judgment shall be entered by the Clerk.