94 F.3d 644
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arthur E. GERTH, Plaintiff-Appellant,
v.
SEARS, ROEBUCK & CO., Defendant-Appellee.
 No. 94-6664.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1996.
 
 Before: SUHRHEINRICH and SILER, Circuit Judges; EDMUNDS, District Judge.*
 SILER, Circuit Judge.
 
 
 1
 Plaintiff, Arthur E. Gerth, appeals the district court's grant of summary judgment to Defendant, Sears, Roebuck & Company ("Sears"). Gerth filed an age discrimination lawsuit against Sears. Gerth charges that the district court's twin legal findings, that he had not established a prima facie case of age discrimination and that he had not established pretext after Sears articulated a legitimate reason for the discharge, were in error. For reasons stated hereafter, this court AFFIRMS the district court.
 
 I.
 
 2
 Gerth began his work association with Sears in 1960. He worked his way up in the company and attained the status of auto center manager at a Lexington, Kentucky Sears store between 1971 to 1990. Gerth transferred to the appliance department in 1990.[1] While Gerth's gross sales in this department were excellent, Sears complained that Gerth was not selling enough maintenance agreements.[2] Gerth repeatedly failed to meet the maintenance agreement percentage goals established for him. Consequently, Sears offered Gerth a position in a less profitable department. Gerth refused, and he ended his employment with Sears in April 1993.
 
 
 3
 Gerth filed a Kentucky age discrimination claim, KY.REV.STAT.ANN. § 344.040, in Fayette Circuit Court on July 27, 1993. Sears removed the action to federal district court based on diversity of citizenship and moved for summary judgment on August 24, 1994. The district court sustained this motion, finding that Gerth had not established a prima facie case of age discrimination because he did not meet his proof of qualification. Alternatively, the court found that even had a prima facie case been established, Sears had articulated a legitimate reason for the discharge and Gerth, in response, had not proven pretext for the discharge.
 
 II.
 
 4
 A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). On a summary judgment motion, the record and all inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).
 
 III.
 
 5
 In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), the Supreme Court constructed a three-part framework for handling employment discrimination cases: first, the plaintiff must establish a prima facie case of discrimination; once established, the defendant must articulate a legitimate, nondiscriminatory business reason for its actions; once articulated, the plaintiff must show that the business reason served as a pretext to mask an illegal discriminatory motive. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1159-60 (6th Cir.1990) (noting that the McDonnell Douglas test has been "routinely employed in this circuit"); Harker v. Federal Land Bank of Louisville, 679 S.W.2d 226, 229 (Ky.1984) (noting that the Kentucky age discrimination statute is modeled after its federal equivalent and that Kentucky courts will consider federal interpretation).
 
 
 6
 A. The Prima Facie Case--Traditional Analysis
 
 
 7
 Gerth carries the initial burden of proving "beyond a preponderance of the evidence" that he can meet the four elements of a prima facie case of age discrimination: (1) that he belongs to a statutorily protected age group, (2) that he was qualified or performed his job satisfactorily, (3) that he was nonetheless terminated, and (4) that he was replaced by a younger person. Harker, 679 S.W.2d at 230; see also McDonald, 898 F.2d at 1159-60 (applying similar standard). There is no dispute that Gerth, being over forty years old, is a member of the protected class. It is also certain that Gerth's 1993 resignation was an adverse employment action.[3] Sears replaced Gerth with a younger person, thereby meeting the fourth requirement. At issue in the case at bar is the second prong: whether Gerth performed his job in a satisfactory manner.
 
 
 8
 "In order to show that he was qualified, [the plaintiff] must prove that he was performing his job 'at a level which met his employer's legitimate expectations.' " McDonald, 898 F.2d at 1160 (quoting Huhn v. Koehring, 718 F.2d 239, 243 (7th Cir.1983)). In other words, if Gerth "was not doing what [Sears] wanted him to do, he was not doing his job." Id. (quotation omitted). In this case, Sears established a maintenance agreement percentage that Gerth was required to maintain. Gerth's failure to meet this percentage was the subject of several meetings and deficiency reviews. Gerth concedes that he was not performing to the satisfaction of the Sears' management. "Consequently, [he] has failed to prove a prima facie case of age discrimination, and therefore, summary judgment under the McDonnell Douglas approach is appropriate." McDonald, 898 F.2d at 1160.
 
 
 9
 Gerth advances several arguments to overcome the qualification threshold. First, he claims that his gross merchandise sales and gross maintenance agreement sales belie any claim that he was not qualified for the position of appliance salesman. In other words, Gerth claims that Sears made "too big a deal" of his failure to attain the maintenance agreement percentage and should have looked at his gross sales instead. "However, the aim [of an age discrimination analysis] is not to review bad business decisions, or question the soundness of an employer's judgment." McDonald, 898 F.2d at 1160 (citing Wilkins v. Eaton Corp., 790 F.2d 515, 521 (6th Cir.1986)); see Harkins, 679 S.W.2d at 231 ("The age discrimination law was not intended as a vehicle for judicial review of business decisions regarding terminations."); see also Baker v. Sears Roebuck & Co., 903 F.2d 1515, 1520 (11th Cir.1990) (rejecting argument that gross sales should excuse a poor maintenance agreement percentage). Merely because Gerth successfully executed portions of his job responsibilities for long periods of time does not excuse his failure to meet the required percentage of maintenance agreement sales.
 
 
 10
 Next, Gerth claims that his failure to meet his maintenance agreement percentage, by Sears' own standards, should not have disqualified him outright from his position. He claims that it was not Sears' policy to judge salesmen on maintenance agreement percentage alone. As evidence, Gerth cites a Sears document that suggests that "any [salesman] who affirmatively offers the Maintenance Agreement to our Customers ... cannot be disciplined or terminated on the basis of poor Maintenance Agreement Sales." The document later confirmed that maintenance agreement sales is but one "measure of performance" for a salesman. This document would tend to show that the mere failure to meet the established percentage, in and of itself, should not have endangered Gerth's qualifications for the job.
 
 
 11
 Sears responds that the document in question is dated June 1994, over a year after Gerth left Sears. The document itself describes that the procedure is a "new" policy on poor maintenance agreement sales performance. Gerth's brief to the district court recognized this policy as "new," inferring that the policy was not in existence while he worked at Sears. Gerth was aware that his maintenance agreement percentage was an important performance measurement to Sears' management. Without more, the document cited by Gerth demonstrates that the business judgment of Sears' management with regard to maintenance agreement sales was "reformed." While such a change in policy would have worked in Gerth's favor had he remained with Sears, there is no evidence that the Sears' management was so enlightened at the time of Gerth's employment.
 
 
 12
 While it appears vacuous to suggest that Gerth, who quite ably sold appliances and maintenance agreements, was not "qualified" or did not perform his job "satisfactorily," he cannot establish a prima facie case by means of the McDonnell Douglas test. In a case remarkably similar to the one at bar, the Eleventh Circuit established that a plaintiff who could not maintain her maintenance agreement percentage and was fired despite excellent overall sales had "failed to demonstrate her prima facie case by means of the McDonnell Douglas test" because she was not qualified for the position. Baker, 903 F.2d at 1521; see also McDonald, 898 F.2d at 1160 (refusing to consider argument by nine-year manager that the company made "too big a deal out of his alleged 'people problems' " and holding that because employee conceded that he "was simply not performing to [his employer's] satisfaction, ... there remains no genuine issue of material fact as to whether he was qualified"); Ang v. Procter & Gamble Co., 932 F.2d 540, 549 (6th Cir.1991) (noting that employee who had trouble communicating, was late with assignments, and was a poor long-range planner "was not qualified" even though he had worked in that position for a considerable period of time). The employer, and not the courts, determines the qualifications required for employment. By failing to maintain his maintenance agreement percentage, Gerth could not meet this required element to establish a prima facie case of age discrimination.
 
 
 13
 B. The Prima Facie Case--Alternative Analysis
 
 
 14
 This circuit and the Kentucky courts have recognized an alternative for proving a prima facie case for age discrimination: plaintiffs can prove a prima facie case through direct, circumstantial or statistical evidence of discriminatory intent. "Instead of a mechanistic application of the McDonnell Douglas guidelines, a trial judge is to consider 'direct evidence of discrimination and circumstantial evidence other than that which is used in the McDonnell Douglas criteria.' " McDonald, 898 F.2d at 1161 (quoting Wanger v. G.A. Gray Co., 872 F.2d 142, 145 (6th Cir.1989)). Under this standard, a "plaintiff may present a prima facie case of age discrimination by introducing evidence that he was adversely affected by the defendant's employment decisions under circumstances which give rise to an inference of unlawful discrimination." McDonald, 898 F.2d at 1161 (quotations omitted). All that is required of Gerth is evidence indicating that age was a factor in Sears' decision to terminate his employment.
 
 
 15
 In the case at bar, Gerth admits that no direct evidence of age discrimination exists. Gerth's statistical evidence is insignificant.[4] Thus, Gerth submits that circumstantial evidence indicates that age was a factor in his termination: Sears retained younger employees who had worse maintenance agreement percentages than Gerth; Gerth had a history of favorable job evaluations and exemplary sales records; and other employees felt pressured to leave their employment with Sears because of their ages.
 
 
 16
 Gerth's foremost evidentiary proof of discrimination is that five salespersons, all of whom were younger than Gerth, were retained by Sears despite having lower maintenance agreement percentages. This "disparate treatment," according to Gerth, is indicative of Sears' age discrimination. See Reynolds v. Humko Products, 756 F.2d 459, 472 (6th Cir.1985) (affirming that the standards that provided basis of termination must be applied equally). The district court agreed with Sears, however, that these other salespersons were part-time employees; thus, the court discounted the evidence because the comparison was not to others who were "similarly situated in all respects." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992); see Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994) ("The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.") (quotation omitted). Gerth recognizes that the comparison between part-time and full-time employees is often inappropriate; however, he asserts that because Sears measured the percentage of maintenance sales to gross sales, the amount of time one sells is immaterial, thus validating the comparison.
 
 
 17
 Sears maintains that the comparisons between Gerth and the five part-time employees is invalid. It is reasonable for an employer to be more concerned about the performance deficiencies of a full-time employee than a part-timer, because the performance of a full-time employee has a substantially greater impact on the employer's operations. Cf. Pierce, 40 F.3d at 802 (finding that supervisor and non-supervisory personnel were different even though both engaged in sexual harassment); Shah v. General Elec. Co., 816 F.2d 264, 271 (6th Cir.1987) (affirming that different standards could be applied to long-time employees as opposed to recent hirees); Reynolds, 756 F.2d at 472 (affirming that certain activities may cause greater concern for an employer because they are of a different magnitude); Baker, 903 F.2d at 1522 ("[E]mployees who have repeatedly failed to reach the quota over an extended period of many years are more likely to receive adverse employment action than employees who have experienced a similar failure for a shorter period of time."). Thus, the district court rightfully discounted the comparison.
 
 
 18
 Gerth's other proof consists of affidavits from former Sears employees that tended to show that older, well-paid employees were encouraged to take advantage of Sears' early retirement plan. Notwithstanding the propriety of this retirement plan, Gerth contends that older employees were pressured to leave their employment. Gerth suggests that such evidence, while not dispositive in and of itself, may in combination with other circumstantial evidence permit an inference that he was a victim of unlawful discrimination.
 
 
 19
 Sears contends that the district court rightly rejected Gerth's attempt to support his claim with these affidavits. This circuit has ruled that early retirement plans are not exemplary of age discrimination unless the plaintiff offers "proof that the employee was forced to retire." Simpson v. Midland-Ross Corp., 823 F.2d 937, 944 (6th Cir.1987). While Gerth's affiants discussed the pressure and encouragement they faced to take the buy-out option, none alleged that Sears forced any employee to retire. None cited any specific facts to support any allegation that Sears discriminated on the basis of age.[5] Thus, the affiants do not provide a genuine issue of material fact that Sears had a discriminatory animus.
 
 
 20
 Gerth's final proof stresses his overall sales and employment record as circumstantial evidence that he was fired because of his age rather than his maintenance agreement sales percentage. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078 (6th Cir.1994), is somewhat instructive to the case at bar. In Manzer, the plaintiff's central argument was that, despite complaints about his "combative attitude," he continued to "receive good performance evaluations and merit pay increases." 29 F.3d at 1084-85. This court did not find such arguments persuasive. Id. at 1085 ("Those are precisely the type of 'just cause' arguments which must not be allowed to creep into an employment discrimination lawsuit."). But see Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1501-02 (11th Cir.1991) (noting that competent performance may play a "small part" in producing sufficient evidence of intent to discriminate). As stated previously, just because Gerth received good evaluations in other spheres of his work responsibilities does not overcome his repeated failures to meet his maintenance agreement percentage. The circumstantial evidence submitted by Gerth, taken as a whole, is not enough to establish a prima face case of age discrimination. The district court correctly granted summary judgment.[6]
 
 IV.
 
 21
 It is true that Sears terminated a salesman who, for the most part, performed well for the company. It is likely true that Sears made a poor business decision to focus on the maintenance agreement percentage as a primary measurement for satisfactory employment.[7] It is certainly true that Sears reformed its policy regarding poor maintenance agreement sales a year after Gerth left. Nevertheless, none of these factors remotely evidences age discrimination. More is required of Gerth. While his case garners sympathy--he was the victim of poor management policy--such a dilemma is not actionable as employment discrimination.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Gerth alleges that he sought this new position because he was pressured to sell more "paper product" (i.e., discount packages for automotive services), and he was unable to meet Sears' goals for these kinds of sales
 
 
 [2]
 Maintenance agreements were high-profit, long-term warranties that were added to the sales price of appliances. It was Gerth's failure to maintain the appropriate percentage of maintenance agreements to his gross sales that concerned Sears' management. Sears cited no other complaints against Gerth except that he did not meet his maintenance agreement percentage. Apparently, this policy of requiring certain maintenance agreement percentages was followed in a number of Sears' stores. See Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1517-18 (11th Cir.1990) (explaining that plaintiff lost her job at Sears because she could not regularly attain her maintenance agreement percentage)
 
 
 [3]
 While Gerth made the ultimate decision to resign rather than transfer, because Sears subjected him to this decision, his resignation was akin to termination. See McDonald, 898 F.2d at 1158 (finding that plaintiff, who refused two other positions within company that "were considered demotions," was "terminated")
 
 
 [4]
 Gerth compares his maintenance agreement percentage to five other employees. Such a small sampling does not provide a valid statistical analysis. See Simpson v. Midland-Ross Corp., 823 F.2d 937, 943 (6th Cir.1987) (finding that reliance upon a sample of seventeen is "suspect"); Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 94-95 (6th Cir.1982)
 
 
 [5]
 Gerth's affidavits do demonstrate that Sears was motivated to reduce salaries of some of its higher paid employees. While age and salary are often correlated, "an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on ... compensation level is necessarily 'age-based.' " Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1126 (7th Cir.1994) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993)). Gerth cannot prove age discrimination if he was fired/transferred "simply because [Sears] desired to reduce its salary costs by discharging him." Id. The same holds true for the early retirement plan: while Sears might have been motivated by an interest to save money, there is no specific allegation that the managers were encouraged to retire merely because they were old
 
 
 [6]
 This court is also confident that the district court ruled correctly that Gerth had not sufficiently supported his claim that the reasons proffered by Sears for his adverse employment treatment--his low maintenance agreement percentage--was pretext for illegal discrimination. In light of this court's finding that Gerth has not constructed a prima facie case, however, an analysis of Gerth's pretext claims is unnecessary
 
 
 [7]
 Sears' preoccupation with the maintenance agreement percentage shows disdain for both employee and consumer. It is "counter-productive and has an 'unfair' effect upon good sales employees, such as the plaintiff. But basic unfairness does not establish discrimination, and there is not sufficient evidence in the record to establish a prima facie case of age discrimination, giving all reasonable inferences in favor of the plaintiff." Baker, 903 F.2d at 1523