PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/13/98
THOMAS  K. KAHN
CLERK

No. 96-4852

D.C. Docket No. 94-6566-CIV-HIGHSMITH

MARC BERMAN,

Plaintiff-Appellant,

versus

ORKIN EXTERMINATING COMPANY, INC.,
a Delaware Corporation,

Defendant-Appellee.

Appeal from the United States District Court for the
Southern District of Florida

**(November 13, 1998)**

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD*, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

---

*Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Plaintiff-appellant Marc Berman appeals the judgment for defendant-appellee Orkin Exterminating Company, Inc. ("Orkin") on Berman's employment discrimination claim. We reverse.

I.

Berman, a member of the Jewish religion, began his employment with Orkin in 1989 as a termite salesman in the Hallandale, Florida office. Berman qualified for the president's club and honor council based on his 1990 sales. In May 1990, Berman questioned manager David Bernstein regarding the reduction in Berman's commission from his sale of fumigation contract, and was told that the reduction was because "[y]ou're Jewish."[1] About the same period of time, Berman heard manager Raul Quiroga refer to Jewish and Jamaican persons in the Hallandale office as "Jewmaicans" and comment that "[t]he Jew didn't make any money today."[2] Berman said that manager Jose Rodriguez once said to Berman "[y]ou're a Jew; you

---

[1] R4 at 24-26. Bernstein testified that Berman's religion had no bearing on the reduction of the commission, and explained that it was a business decision. R8 at 562-563.

[2] R4 at 31. Orkin employees Scott Morris and Sean Daniels testified that they had overheard Quiroga make multiple comments at various times regarding Berman's religion. Morris and Daniels said that Quiroga's use of the term "Jewmaican" became commonplace in the office, and was used several times during a month. R6 at 299, 345-348. Quiroga denied making such comments.

know how to make money."[3]  Bernstein testified that Berman never complained to him about any religious comments made in the Hallandale office.

In February 1992, Berman was promoted to sales manager of the West Palm Beach office. While Berman worked in West Palm Beach, regional sales coordinator William Hill made two comments to Berman which Berman considered to be anti-Semitic.[4]  After Berman turned down a promotion to Miami, he was transferred to the Pompano office as a salesman.[5]  In May 1993, while Berman worked in the Pompano office, a message was left on Berman's home answering machine concerning a sales lead in which the speaker referred to Berman being Jewish.[6]  Berman identified the voice on the answering machine as belonging to Pompano

---

[3] R4 at 31-32.  Berman qualified for the president's club again in 1991 based on his yearly sales.  Morris said that he also heard Rodriguez use the term "Jewmaican" several times in reference to Berman.  R6 at 310-312.

[4] Berman testified that during a meeting break, Hill "came up to me and he said, 'I told you to sit down.  You fucking people never listen.'" R4 at 34-35.  A few weeks after Berman turned down a promotion to Miami, Berman testified that Hill said "[y]ou had your chance, and I can't believe you people would turn down a raise."  R4 at 35-36.  Hill also denied making any statements using the term "you people" to Berman, or knowing anything about Berman's religion.

[5] Hill said that Berman was transferred because he was ineffective as the West Palm Beach sales manager.

[6] On the message, the speaker referred to Berman as "[y]ou Jewish fuck."  R3 at 148, Appendix D at 100-101.

branch manager Mark Craven.[7] After receiving this message, Berman's sales territory was eliminated. In June 1993, Berman filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on his religion. Hill, Miami region manager Tom Cafiero, and South Florida region manager Joseph Cannariato were aware of Berman's first EEOC charge.

On August 12, 1993, Cannariato offered Berman in writing a transfer to the Fort Lauderdale office as a sales supervisor with a slight increase in pay.[8] On August 16, 1993, Cannariato and Berman discussed the Ft. Lauderdale sales supervisor position, but Berman rejected the offer.[9] Berman testified that he declined the transfer because he was afraid that he would not be able to completely satisfy Cannariato and would not have been able to sell.[10] After Berman had rejected the offer, Cannariato, on August 16, 1993, involuntarily transferred Berman to Ft.

---

[7] South Florida region manager Joseph Cannariato confirmed that the voice on the tape sounded like Craven, and explained that he had given Craven a corrective action report after Cannariato heard the tape. Orkin employee Scott Morris testified that Craven told him to "[r]ide with Marc, he's a Jew and he can teach you how to make money." R6 at 292.

[8] R4 at 52.

[9] R4 at 52.

[10] Howard Houston, Orkin region service coordinator and former Fort Lauderdale sales manager, testified that, although he had never spoken with Berman concerning the sales supervisor position, the job of sales supervisor would have had only a minimal impact on Berman's ability to sell and would have had ample time to sell. Cannariato and Orkin branch manager John Markerson also stated that Berman would have been able to continue selling if he had accepted the sales supervisor's job. R6 at 477; R8 at 575.

Lauderdale as a sales person.[11]   On August 26, 1993, Berman filed a second EEOC charge alleging retaliation based on the filing of his first EEOC charge.[12]   Within a few days of Berman's transfer to the Fort Lauderdale office,  his sales territory was cut in half, but was later reinstated.[13]   When Berman complained, he was told by branch manager Howard "Sam" Houston that " if [Berman] d[idn]'t like it, [Berman] should quit."[14]   Berman never complained of religious discrimination to Houston or advised Houston that Berman had filed an EEOC complaint.

In October 1993, Berman was transferred from the Fort Lauderdale office to the Hallandale office, and was told that he would have his original territory.[15]   In Hallandale, Berman's sales manager was Dennis Bacerio, and his branch manager was

---

[11]  In an inter-office memorandum, Cannariato stated that the "reason for the transfer is the constant personality conflict between you and Mark Craven.  Cannariato testified that he initiated the transfer based on the "great conflict of interest" between Berman and Craven.  R8 at 573.   Berman testified that he was transferred from the Pompano office to the Fort Lauderdale office on August 18, 1993.  R4 at 48, 52-53; R5 at 234.

[12]  Berman alleged that, after the filing of his first EEOC charge, he was not given sales leads; despite his complaints, his supervisors failed to correct the failure to give him sales leads; he was offered a transfer which would have resulted in his not being able to sell or to satisfy the regional manager; was transferred to Ft Lauderdale; and his sales territory was cut in half.  R3-148, Appendix A.  Cannariato said that he never took any action against Berman because he had filed an EEOC charge.  R8 at 569.

[13]  Orkin employee Harvey Bernstein testified that Berman's territory was "much larger than the other territories."  R6 at 422.

[14]  R4 at 54, 58.

[15]  Cannariato told Berman that he was being transferred because he was disruptive.  R4 at 63.

Alex McKinsey. On a weekly basis or when Berman did not understand something, Bacerio would ask whether Berman wanted Bacerio "to speak Jewish to [him]."[16] Berman's Hallandale territory was cut five blocks on his first day, five additional blocks a week later, and to one-half its previous size in May 1994. The May 1994 cut caused Berman an economic loss since May was the "best month of the year for termite sales." In June 1994, Berman's territory was reinstated, cut, and reinstated again. Berman was terminated on July 15, 1994.

Berman filed this action against Orkin alleging religious discrimination and retaliation in violations of Title VII of the Civil Rights Act.[17] The case proceeded to trial. At the close of Berman's case and at the close of the entire case, Orkin moved for judgment as a matter of law but the district court reserved ruling on Orkin's motions. The jury rendered a verdict for Berman for $18,500.00 on his retaliation claim, but for Orkin on Berman's religious discrimination claim.

After the jury was dismissed, the court ordered Orkin to file a brief in support of its motion for judgment as a matter of law as to the retaliation claim, and

---

[16] R5 at 92-93; R6 at 276-278. Morris testified that he had heard Bacerio and several other managers make the same statement, or the statement "Do I need to speak Yiddish to you," to Berman. R6 at 303-304, 331-332. Morris also testified that he heard Bacerio say, in reference to Berman, that he was "not giving that Jewish bastard any leads I don't have to," and "I'm tired of arguing with that Jewish bastard . . . ." R6 at 306-309.

[17] 42 U.S.C. §§ 2000e-2 and 2000e-3. Berman also alleged a state law defamation claim. The district court granted Orkin's motion to dismiss the defamation claim, and Berman does not challenge this dismissal on appeal

for Berman to respond. Orkin renewed its motion for judgment as a matter of law, Berman responded, and Orkin replied. The district court granted Orkin's motion finding that Berman "presented no evidence to satisfy the third element of a prima facie case" that "any adverse employment action was causally related to the filing of [Berman's] grievance with the EEOC." It noted that Berman had acknowledged that Orkin's failure to provide him with sales leads predated Berman's filing of a complaint with the EEOC. [18] It noted that, although Berman claimed that Orkin retaliated against him by reducing the size of his territory while he worked in the Fort Lauderdale and Hallandale offices, Berman presented no evidence that "the managers charged with making these decisions" were involved in, or even aware of [Berman's] complaint against the Pompano office."[19] Berman timely appealed.

II.

On appeal, Berman argues that there was sufficient evidence for a reasonable jury to find that he had proven a prima facie case of retaliation. He alleged that the district court focused on only the sales leads and reduction of his territory, and failed to consider the "illusory promotion" and the involuntary transfers. He stated that the adverse employment acts occurred after he had filed both his initial and

---

[18] R3-179 at 5.

[19] R3-179 at 5-6.

second EEOC charges. He maintains that Orkin's regional manager responsible for the transfers, the assistant regional manager, and the regional sales coordinator were aware of the EEOC charges.

This court reviews de novo the district court's grant of judgment as a matter of law, and applies the same standard as that applied by the district court.[20] A court must view all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party when considering a motion for judgment as a matter of law.[21] The court should grant the motion only if it finds that reasonable people exercising impartial judgment could not arrive at a contrary verdict, and may not weigh the evidence or decide the credibility of the witnesses.[22] To survive a motion for judgment as a matter of law, the nonmoving party must provide more than a scintilla of evidence that there is a "substantial conflict in evidence to support a jury question."[23]

---

[20] Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

[21] Id., quoting Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)

[22] Combs, 106 F.3d at 1526, citing Carter, 870 F.2d at 581.

[23] Combs, 106 F.3d at 1526.

To prove discriminatory treatment violating Title VII, a plaintiff must first establish a prima facie case of discrimination.[24]   If the plaintiff presents direct evidence that a "discriminatory animus played a significant or substantial role in the employment decision, the burden shifts to the employer to show that the decision would have been the same absent discrimination."[25]  A statement by a person who played no part in the adverse personnel decision is not direct evidence of discrimination.[26]

Absent direct evidence of discrimination, a plaintiff in a retaliation case must establish a prima facie case by showing that  (1) the plaintiff  engaged in a statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action.[27]  The third prong is satisfied if the evidence shows that the protected activity and the adverse action are not totally unrelated.[28]  If a prima facie

---

[24] Coutu v. Martin County Board of County Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995).

[25] Haynes v. W.C. Caye & Co., 52 F.3d 928, 931 (11th Cir. 1995).

[26] See Mauter v. The Hardy Corporation, 825 F.2d 1554, 1557 (11th Cir. 1987).

[27] Bigge v. Albertsons, Inc., 894 F.2d 1497, 1501 (11th Cir. 1990).

[28] Id., citing Simmons v. Camden County Board of Education, 757 F.2d 1187, 1189 (11th Cir.), cert. denied, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985); Coutu, 47 F.3d at 1073; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

9

case is established, the inference is raised that discriminatory intent motivated the adverse employment action, and the burden shifts to the employer to "clearly articulate in a reasonably specific manner a legitimate non-discriminatory reason" for the adverse action with credible evidence.[29] If the employer satisfies this burden, the burden again shifts to the plaintiff to show that the proffered reason is a pretext for the true discriminatory reason.[30] The transfer of an employee which results in a substantial reduction in the employee's income is an adverse employment action.[31]

In a retaliation case where the plaintiff has failed to produce direct evidence of discrimination, the employer may rebut the prima facie case of retaliation by articulating a legitimate nondiscriminatory reason for the employment action with credible evidence.[32] In order to state a retaliation claim, the plaintiff need only show that he had a "reasonable belief" that an unlawful employment practice was occurring, and is not required to show that the employer actually engaged in an unlawful employment practice.[33]

---

[29] Id.

[30] Id.

[31] Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1519 (11th Cir. 1990).

[32] Id.

[33] Wu v. Thomas, 863 F.2d 1543, 1549 (11th Cir.), reh'g denied 871 F.2d 122 (1989) (finding it irrelevant that the plaintiff had lost an earlier sex discrimination claim against her employer).

It is undisputed that Berman engaged in a statutorily protected activity by filing EEOC charges alleging religious discrimination on June 15, 1993, and on August 26, 1993. Although Berman did not ultimately prevail, it appears that, based on the comments regarding his religion and the transfers and reductions in his territory, he had a "reasonable belief" that an unlawful employment practice was occurring.

The district court found that Berman had failed to show that Orkin had taken adverse employment action against him after he had filed his EEOC charge, and had failed to show that any adverse employment action was causally related to his EEOC charge. But the district court failed to consider that an involuntary transfer, when coupled with a sharp corresponding reduction in territory size, can constitute adverse employment action. On causation, the court overlooked testimony that one of the managers, Joseph Cannariato, involved in the transfers was not only aware of Berman's EEOC complaint, but -- according to Cannariato -- was motivated chiefly by the "conflict of interest" between Berman and his alleged harasser. Also, the first transfer occurred within five weeks after Berman had filed his EEOC charge and both transfers occurred within a couple of months of the complaint. Based on this evidence, it appears that Berman established a prima facie case of retaliation

11

Therefore, the district court erred in granting judgment as a matter of law to Orkin on the retaliation claim.

For these reasons, the district court's order granting judgment as a matter of law to Orkin on Berman's retaliation claim is REVERSED, and the jury's verdict for Berman is REINSTATED.

WELLFORD, Senior Circuit Judge, concurring in part and dissenting in part:

In this vigorously contested case, the jury found in favor of the defendant on Berman's discrimination claim. The district court entered a final judgment in defendant's favor on this claim and we have affirmed this action. Plaintiff filed his discrimination claim on or about June

12

1315, 1993. He complained about adverse actions taken against him by reason of his religion in paragraphs 14 through 34, inclusive, that took place before he filed his discrimination charge.[34] He sets forth asserted discriminatory religious conduct under Title VII through paragraph 70 of his complaint. Plaintiff failed to sustain all of these charges, some of which entailed conduct after June 15, 1993.

There is no question but that Berman received promotions and pay increases while he was working for defendant. He declined an offered promotion (or any with a pay increase) to a position of sales supervisor in Orkin's Miami office in 1992, and Berman declined, at a later time, another such promotion to Orkin's Pompano office. Berman does not challenge this jury verdict on the discrimination claim.

Berman's retaliation charge, filed August 26, 1993, asserted these claims:

(1)  sales leads were given to others, and his complaints went unanswered;

(2)  he was promised a new territory which was cut in half;

(3)  hearsay information that a branch manager will never offer him a managerial position again.

The EEOC found no basis to believe there had been, in fact, a violation of the statute of July 18, 1994.

The district court, which had opportunity to hear the proof and evidence, granted judgment as a matter of law to defendant. The district court made a finding as to contention (1) that

---

[34] In Paragraphs 50 through 54 and 57 and 58, Berman reiterated some of these same charges pertaining to alleged discriminatory conduct of defendant that occurred prior to June 15, 1993.

Berman acknowledged that defendant's alleged failure to give him sales leads took place before his original charge on June 15, 1993. This is borne out by the original complaint.

The district court found that "plaintiff acknowledged that, at all times, his territory was at least as large as that of other salespeople, and Berman had no knowledge whether or not territory changes resulted from changes in the size of staff," as defendant maintained.

Even if *arguendo* it were assumed that there were a basis for these changes, the district court concluded that "plaintiff failed to establish that any adverse employment action was causally related to the filing of the plaintiff's grievance with the EEOC."

Berman's case, at best, was a thin one. Especially troubling was refusal of the offer of promotion in light of uncontradicted testimony of Orkin officials that had he accepted this promotion, this supervisory position would have had little, if any, impact on his continued ability to sell. Also troubling is that Berman's many other complaints about being mistreated because he was Jewish were found not to have any substance by the jury (nor by the EEOC).

Reluctantly, I join the opinion that we should reverse the district court with respect to the retaliation claim and the award of damages. I would not, however, grant reinstatement to Berman under the circumstances of this case.

14